LEMUEL T. GOLDSBERRY ET AL. V. STATE OF NEBRASKA.

FILED NOVEMBER 19, 1902. No. 12,722.

1. **Change of Venue in Criminal Case: DISCRETION OF TRIAL COURT: ABUSE.** A motion for a change of venue in a criminal prosecution is addressed to the sound discretion of the trial court, and unless there has been an abuse thereof, its ruling on the motion can not be disturbed.

2. **Motion for Change of Venue: SHOWING.** If from the showing made in support of and against the motion for a change of venue in a criminal case, there is no reasonable ground shown on which to found a belief that the accused can not have a fair and impartial trial in the county where the offense is alleged to have been committed, it is not error to deny such motion.

3. ———: ———: No ERROR. *Held*, in the case at bar, the order of the trial court overruling a motion for a change of venue is without error.

4. **Purpose of Evidence of Separate Offense: SCIENTER.** Where defendants are accused of buying and receiving stolen property, knowing it to be stolen, with intent to defraud the owners

Goldsberry v. State.

thereof, it is competent for the prosecution to offer testimony of other alleged receivings of stolen property, closely related in time, from one of the parties connected with the delivery in the principal offense charged, for the purpose of proving *scienter*.

5. **Criminal Evidence:** COLLATERAL EVIDENCE.  Where the facts and circumstances surrounding the collateral offenses are related to and so connected with the principal offense charged as to logically warrant the inference of guilty knowledge in receipt of the property described in the information, evidence of the collateral offenses is competent and material even though the person from whom the property was received in the collateral transactions was not the only one concerned in the delivery of the property constituting the principal offense.

6. ———: ———.  *Held,* in the case at bar, as disclosed by the record, the testimony relating to other alleged receivings of stolen property from one White, a witness offered by the state, was properly admissible in evidence for the purpose of proving guilty knowledge in respect of the principal offense for which defendants were tried.

7. **Collateral Evidence of Guilty Knowledge.**  The fact that the prosecution offered direct evidence to prove guilty knowledge as to the offense charged does not preclude the state from also offering testimony of collateral offenses closely related in time and circumstances, for the same purpose.

8. **Receiving Stolen Property:** PROOF OF COLLATERAL OFFENSE.  Where an accused is on trial for buying and receiving stolen property, knowing it to be such, it is competent to offer testimony of other alleged receivings of stolen property from the same person concerned in the delivery in the principal offense charged, both prior and subsequent to the time of the offense as laid in the information, where such collateral transactions are closely related thereto in time.

9. **Admission of Testimony:** NO ERROR.  Where a witness testified as to collateral transactions in which stolen property was alleged to have been delivered to the accused, *held,* that testimony incidentally given as to the larceny of other property not delivered to the accused was not erroneously admitted.

10. ———: ———: DETAILS.  Nor does the fact that such witness has entered into details of the several transactions, whereby he claimed to have delivered stolen property to the defendants at other times than the one for which they were being tried, render the admission of such testimony erroneous.

11. **Guilty Knowledge:** COLLATERAL OFFENSES: INSTRUCTION.  Where evidence of collateral offenses is admitted for the purpose of showing guilty knowledge in receiving stolen property, an

instruction is not erroneous because it omits to instruct the jury that the receipt of stolen property in the collateral transactions must have been with knowledge that it was stolen property.

12. **Intent.** An intent to defraud is an essential element of the crime of receiving stolen property. .

13. **Instruction.** It is error for the court to instruct the jury that they may convict the defendant without finding a specific fact which constitutes one of the essential ingredients of the offense charged.

14. **Trial of Felony:** PROVINCE OF JUDGE: PROVINCE OF JURY. In the trial of an information charging a felony, the presiding judge is without lawful authority to determine the issue, or any of the questions of fact involved in the issue. That power belongs exclusively to the jury, regardless of the state of the evidence. They must be fully satisfied of the existence of every fact constituting an element of the crime charged, and it can not be assumed that they are so satisfied because they ought to be.

15. **Fraudulent Intent:** PRESUMPTION. The law does not presume the existence of a fraudulent intent from the fact that a party received stolen property with knowledge of the theft.

16. **Descriptive Averment of Information.** A variance between a descriptive averment of the information and the evidence given in support thereof, is not fatal unless such variance is material to the merits of the case or prejudicial to the defendant.

ERROR from the district court for Nemaha county. Joint indictment for receiving stolen horses. Tried below before JESSEN, J. Conviction. Defendants bring error. *Reversed.*

*William H. Kelligar, Edgar Ferneau* and *H. A. Lambert,* for plaintiffs in error.

*Frank N. Prout, Attorney General, Norris Brown, William B. Rose* and *E. B. Quackenbush, contra.*

SULLIVAN, C. J.

Three defendants were informed against jointly for receiving stolen horses; the charge being that four certain horses and one mule, describing the same, were stolen in the state of Missouri, in Lafayette county, from different

owners, and on or about the 20th of November, A. D. 1900, delivered to and received by the defendants in Nemaha county, this state; they knowing such property to have been stolen, and with the intention on their part of defrauding the respective owners thereof. A plea of not guilty was entered, and after trial a verdict of guilty was returned against all three defendants, on which they were by the court sentenced to imprisonment in the penitentiary for ten, four and two years, respectively. They bring the cause here for review by proceedings in error.

Immediately preceding the trial a motion for a change of venue from Nemaha county was filed, giving as reasons therefor that there existed among the people of said county a general belief that the defendants were guilty; that there was a strong bias and prejudice against defendants among the people in said county and that a fair, impartial and unprejudiced jury could not be obtained, all of which would prevent them from having a fair and impartial trial. To support the motion for a change of venue, affidavits, subscribed by different persons, to the number of thirty-nine or forty, were filed in the cause. These affidavits, in the main, were made by citizens of the town of Auburn, the county seat of Nemaha county, or of the vicinity thereof; and it was therein stated that throughout the county and especially in and about Auburn, there existed a general and strong belief that the defendants were guilty of the crime charged against them, and because of such belief and general bias and prejudice, the affiants believed it would be impossible to obtain a fair, impartial and unprejudiced jury. It is also attempted to be made to appear that because of the activity of citizens generally, and the prejudice against the defendants, it was with great difficulty that they were enabled to procure bail-bond, although amply able to indemnify their sureties, and that those who had gone bail for them had, because of the opposition and criticisms of the citizens, withdrawn their names as sureties on defendants' recognizance. There is also presented as a part of the showing for a change of venue copies of

newspaper reports of the preliminary trial. The defendants themselves filed affidavits to the effect that exaggerated and false reports had been circulated concerning them, relative to the commission of many and divers crimes, and that they had kept headquarters for a large gang of horse-thieves operating in Kansas, Nebraska and Missouri, and had handled hundreds of horses, knowing them to be stolen property, and were criminals of the most pronounced type and guilty of all kinds of crime. Numerous other alleged facts, calculated to show that great prejudice existed against them, were narrated in such affidavits. In opposition to the showing made by the defense, the state offered affidavits subscribed by one hundred or more of the citizens from all parts of the county, in which it is stated that there had at no time existed any strong feeling, bias or prejudice against either of the defendants, and if any such feeling existed it was confined to Auburn and vicinity, where the offense was alleged to have been committed. A careful reading of the affidavits for and against the request for a change of venue, convinces us no error was committed in overruling the motion. When analyzed, the showing extends no further than to disclose that, at the preliminary hearing, evidence tending to establish the probability of guilt of the offense charged, and other offenses of a similar nature, to prove guilty knowledge, was of such a character as to excite more than ordinary comment and discussion by those cognizant of the trial, and of the character of the evidence produced by the state at such preliminary hearing. There is no showing which would indicate any undue excitement, passion, ill-will, bias or prejudice on the part of the citizens generally. The newspaper reports were only such as might reasonably be expected in the dissemination of news regarding the occurrence, and would not necessarily disqualify even those who had read the newspaper accounts of the preliminary hearing. The affidavits of the defendants as to the false rumors and exaggerated reports concerning their guilt of the offense charged and of the

commission of many other crimes, must be taken with a grain of allowance, in the face of the numerous affidavits of citizens throughout the county generally, showing that no public sentiment, ill-feeling or bias had been engendered as a result of the institution of criminal proceedings against them. In short, the showing in support of the application for a change of venue, on the face, appears formidable and as possessing some merit; but when all the evidence is carefully scrutinized and inquired into, it shows nothing more than a normal condition of affairs. It is nothing strange or unusual that the preliminary trial should have created more or less public discussion and comment in the immediate vicinity, and have occupied considerable space in the newspapers; but such public notoriety of the case falls far short of showing such bias and prejudice among the citizens generally in the county as would preclude the defendants from having a fair and impartial trial by a jury free from any legally disqualifying cause. The motion is addressed to the sound discretion of the trial court, and unless there has been an abuse thereof the ruling can not be disturbed. There is no reasonable ground shown on which to found a belief that the defendants could not have a fair and impartial trial in the county where the offense was alleged to have been committed, and for that reason no error appears in denying the motion for a change of venue. We are persuaded, from a reading of the record, that the ruling entered on the motion was not only entirely proper, but the only one that could rightfully be made.

It is next contended that the trial court committed error in admitting a certain line of evidence for the consideration of the jury, the tendency of which was to prove that in other transactions, and at other times than the one being investigated, the defendants had received horses and other stolen property from a witness testifying on behalf of the state, by the name of White. The evidence of such other receivings of stolen property was confined to a time within two or three months of the commission of the alleged

offense for which defendants were being tried. It is argued that this class of evidence does not come within the exception which permits proof of other offenses to prove *scienter,* but was evidence relating to distinct, separate and independent offenses, and therefore prejudicial to the defendants. It is conceded that evidence of the receiving of other property stolen by the same person from whom it is claimed the property in question, according to the theory of the state, was received by the defendants in the case at bar, is admissible; but it is insisted that while the state undertook to show the property in question was stolen by one Warden, and by him delivered to the defendants, and received by them knowing the same to be stolen, which constituted the offense charged against them, this state of facts furnished no legal basis for the introduction of testimony as to other receivings of stolen property from the said White, a witness offered by the prosecution. The state was permitted to offer testimony by the witness White of several alleged receivings of stolen property from him by defendants which were separate and distinct transactions from that of the principal offense charged. In order that the testimony of the character under consideration may be understood, it is necessary to refer briefly to the transactions as disclosed by the evidence of the prosecution. In the first place, it is to be borne in mind that the defendants were charged with receiving stolen horses with knowledge that the same were stolen, and with the intention of defrauding the owners thereof. The prosecution in order to make its case must produce evidence to the satisfaction of the jury to show that the property mentioned in the information was stolen property; that it was received by the defendants, either directly or indirectly, from the thief, with knowledge that it was stolen property, and with the fraudulent intent of depriving the respective owners of the use thereof. One of the essential ingredients in establishing the offense was guilty knowledge on the part of the defendants of the character of the property which they were charged with receiving; that is,

that it was stolen property. To prove its case, the prosecution offered as a witness a man by the name of White. White was a self-confessed and accomplished horse-thief, who had been engaged in the business for many years, and who had repeatedly been sentenced to the penitentiaries of Kansas and Missouri for the commission of such crimes. He testified, in substance, that he had been acquainted with the defendants for several years, and upon being released from the penitentiary in 1900, he went to the place where defendants had resided, in Kansas, and finding they had moved, followed them to Auburn, in this state, where he visited with them a brief period in September of that year. At the time of such visit he testifies that an arrangement was then made whereby the defendants would accept from him all horses he might be able to steal, and pay him so much for each head or team, according to the character of the animals offered; that he afterwards, and before the transaction for which the defendants were tried, delivered them some stolen property in pursuance of such arrangement; that on one of his visits in October, following his first visit, he was introduced by one of the defendants to a man by the name of Warden, who, it was said by the defendant at the time of introduction, was engaged in the same business that he (White) was. White further testified that shortly before the commission of the alleged offense charged in the information, he fell in with Warden at some place in Kansas, who then had in his possession some of the horses afterwards claimed to have been delivered to defendants,—and that later on, at Falls City, in this state, he again fell in with Warden, and at that time he had the five animals charged to have been received by the defendants; that from Falls City the two, Warden and White, brought the horses to Auburn, where they arrived near midnight, and after arousing the elder Goldsberry, placed their horses in defendants' livery barn and remained over night at the home of the defendant mentioned; that the next morning the horses were delivered to the defendants, each taking a portion of them, and that at that

time the parties discussed the manner in which they had been stolen, and from where and whom they had been taken; and that the whole subject had been gone over in a 'talk between defendants and Warden and White. White also testified as to other deliveries of stolen horses made by him to defendants subsequent to the time of the delivery made when Warden and White were together. At no other time does Warden figure in the different transactions.

Because White testified on his cross-examination that he did not steal or participate in the theft of the animals with which Warden was connected, and had no connection therewith, save that he was with and assisted Warden at the times and in the manner stated, it is urged that the principal offense was so disconnected and independent of the other transactions of which White testified that no relation existed between them, and no logical inference of guilty knowledge in receiving the property charged in the information could be drawn from the testimony relating to the collateral transactions; that the admission of the testimony of White as to the collateral offenses does not come within any recognized exception to the general rule excluding evidence of other similar offenses, and was highly prejudicial to the defendants. It is said by counsel for defendants (citing *Coleman v. People*, 55 N. Y., 81, and *Copperman v. People*, 56 N. Y., 591) that this class of evidence is not admissible for the purpose of proving guilty knowledge unless the circumstances connecting the transactions are such that a natural inference may be drawn that if the accused knew one article was stolen, he would be chargeable with knowledge that the other was, also, and that one of the circumstances which must exist to make this kind of evidence admissible is that the stolen property must be received from the same person, or some other person connected with him in the commission of the offense. While we are disposed to agree to the statement as a general proposition of law, we are of the opinion counsel have made a misapplication of the facts as disclosed by the record in the case at bar. It is true that the

state's witness, White, testified that he did not participate in the theft of the horses. It is also true that he was an active participant, according to his own testimony, in the delivery of the stolen property to the defendants. The state was not concerned in establishing to a certainty whether he or Warden, or both of them, had stolen the horses, but undertook to prove that the property stolen and, as White testified, taken by Warden, and delivered by both White and Warden to the defendants, was received by them as stolen property, knowing it to be such. From the testimony, White was as much of an actor in taking the property from Falls City to Auburn, to be delivered to the defendants, as was the man Warden, or more so. White was with Warden when the horses were taken on the night of the 20th to the barn of the defendants, and with him stayed at the home of the senior defendant for the remainder of the night, and was present the next day when the delivery was made, and was a party to the conversation between the parties in which the defendants were advised not only that the property was stolen, but where and how it had been stolen. Warden had been introduced by defendants to White as one engaged in the same business. White was, whatever may have been his participation in the larceny, certainly an active actor in the reception of the stolen property by the defendants. Such being true, testimony concerning other transactions showing the delivery of other stolen property by White alone would, it occurs to us, clearly bring it within not only the reason of the rule, but the rule itself. Testimony of collateral transactions, closely related in time, between the defendants and White, would manifestly have a material bearing in respect of the guilty knowledge of the defendants regarding the reception of the stolen property in the principal transaction; and such collateral transactions, if established by the evidence, would logically warrant the deduction that the defendants at the time of receiving the property in controversy had knowledge of its character and received it knowing it to be stolen. The character of

White and Warden, both, and their relation to the de-
fendants, were proper subjects of inquiry, as throwing
light upon the question of the knowledge of the defend-
ants (*Foster v. State*, 106 Ind., 272), and because of their
character and relation to the defendants, the inference
would be justified that they knew the horses received by
them were stolen property. Testimony of other offenses,
the tendency of which is to show guilty knowledge re-
specting the offense for which the defendants were being
tried, has always been recognized in this state as an ex-
ception to the general rule to the effect that evidence of
other similar offenses can not be introduced in order to
establish the crime charged.

In *Berghoff v. State*, 25 Nebr., 213, the exception is
clearly recognized in the syllabus, where it is held: "Ex-
cept in cases where it is necessary to show guilty knowl-
edge, it is not admissible to prove that, at another time
and place, the accused committed, or attempted to commit,
a crime similar to that with which he stands charged."

In *Davis v. State*, 58 Nebr., 465, 466, where the crime of
uttering forged paper was under consideration, it is said:
"The general rule is that evidence of the commission or
attempt to commit a crime similar to the one charged is in-
admissible. But an exception has been quite uniformly
made in trials of some charges, of which is the one in the
case at bar, where it is necessary to show the intent or
guilty knowledge of the accused."

And in *Burlingim v. State*, 61 Nebr., 276, it is held: "On
the trial of a person charged with having aided and abetted
another in the forgery of a deed, it is proper, for the pur-
pose of proving the criminal intent of the principal felon,
to show that the person who committed the forgery had,
but a short time before, forged another deed purporting
to convey the same property."

In *Bottomley v. United States*, 1 Story [U. S. C. C.],
135, 143, the rule is stated as follows: "In all cases where
the guilt of the party depends upon the intent, purpose or
design with which the act is done, or upon his guilty

knowledge thereof, I understand it to be a general rule, that collateral facts may be examined into, in which he bore part, for the purpose of establishing such guilty intent, design, purpose or knowledge."

Says the supreme court of Connecticut, in *State v. Ward,* 49 Conn., 429: "To prove guilty knowledge on the part of the receiver, it may be proved that he had before received stolen goods from the same person from whom he received the goods in question. It is not necessary that the goods before received should have been stolen from the same person, nor be of the same character."

In *Shriedley v. State,* 23 Ohio St., 130, 142, the court expresses itself on the subject as follows: "But, without discussing the question upon principle, I deem it only necessary to say, that we are constrained by the authorities to hold, that, upon the trial on an indictment for receiving certain stolen goods, knowing them to have been stolen, evidence that other goods, known to have been stolen, were previously received by the defendant from the same thief, is admissible for the purpose of showing guilty knowledge on the part of the accused that the goods, for receiving which he is charged, were stolen"; citing *The King v. Dunn,* Moody's C. Cas. [Eng.], 146; *Devoto v. Commonwealth,* 3 Met. [Ky.], 417; *People v. Rando,* 3 Parker, Cr. Rep. [N. Y.], 335; *Rex v. Davis,* 6 C. & P. [Eng.], 177; 3 Greenleaf, Evidence, sec. 15, and note; 2 Wharton, American Criminal Law, sec. 1889; 2 Russell, Crimes, 251; Roscoe, Criminal Evidence, 875.

In *Morgan v. State,* 18 S. W. Rep. [Tex.], 647, it is held, regarding the admissibility of evidence to prove knowledge and intent: "It was admissible to show that defendant knew the cattle were stolen, by evidence that at other times and places than that charged he received cattle from persons who owned none, and who had no money to buy any; that there were many different brands on the cattle received from the person from whom he got the animals, as charged in the indictment, while some had their brands burnt; and that all these cattle had been found in the

possession of the person to whom defendant delivered them." See, also, *Commonwealth v. Johnson,* 133 Pa. St., 293; *Coleman v. People,* 58 N. Y., 555; *Harwell v. State,* 2 S. W. Rep. [Tex.], 606; Underhill, Criminal Evidence, sec. 89 and notes.

We are satisfied that, on principle, the witness White was so connected with the delivery of the horses in controversy and was an actor in that transaction to such an extent, as to make it permissible, under the authorities cited, to introduce testimony concerning other transactions wherein it is claimed the defendants received stolen property from him, for the purpose of establishing, not that the defendants were guilty of other offenses, but to show that in receiving the property with which they were charged, they had knowledge at the time that the property was stolen, and that all such transactions are so related and connected with each other as to logically justify the inference, if such testimony was believed by the jury, and it was found the animals in controversy were actually delivered to the defendants, that they were received by them with guilty knowledge of their stolen character. The trial court, by a proper instruction, limited the evidence relating to the collateral transactions to the one purpose of determining guilty knowledge on the part of the defendants in the receipt of the property described in the information.

It is also contended that the court erred in permitting the introduction of testimony concerning the collateral transactions referred to for the reason that the prosecution introduced direct evidence that the defendants knew that the horses were stolen. It is urged that because the state had some direct testimony tending to show guilty knowledge, it was not necessary nor competent to prove other receivings for that purpose, and the reasoning of the courts for permitting evidence of these collateral transactions, which is based partially on the theory that it is the best evidence obtainable for the purpose, is appealed to in support of the argument. The

contention amounts to the proposition that if there is any direct evidence of guilty knowledge, then evidence of other similar offenses, although relating to the principal one and tending to establish guilty knowledge, is not admissible. We can not agree with counsel; nor can we believe that because the state has some testimony of a positive character, it is restricted to that evidence alone for the purpose of proving knowledge. Evidence of other transactions being admissible under the rule which is an exception to the general one, the state may thereunder avail itself of all legitimate evidence, whether it be positive or of an inferential character only. It may resort to all the legal evidence it has bearing on the subject, whether direct and positive or circumstantial. Because the state has some direct testimony tending to show guilty knowledge, this will not preclude evidence of collateral transactions introduced for the same purpose.

It is next argued that the trial court erred in admitting evidence of the receipt by the defendants, from the witness White, of other stolen horses subsequent to the time of the alleged receipt of the property described in the information, for the receipt of which the defendants were on trial. It was made to appear from White's testimony that he had had several transactions with the defendants after his meeting with them in September, 1900, in which he had delivered to them, and they had received, other property which it is claimed he had stolen. Some of these transactions occurred before and some after the time of the alleged receiving of the stolen horses described in the information, and in time were all related to the main transaction within a period of two or three months. All these transactions were apparently consummated in pursuance of the plan and arrangement made by the witness and the defendants at their September meeting. We can conceive of no logical reason for distinguishing those transactions subsequent to the main one from the ones occurring before that time. They all bear the same relation to the principal transaction. If one offense has a

logical connection with the principal one for the purpose of establishing guilty knowledge of the offense charged in the information, then all others have, whether occurring before or subsequent to that time. They are all closely related, not only in time, but in the circumstances surrounding each of them, and there is a marked similarity of one with the other. If the offense for which the defendants were tried had been the first of a series of transactions, instead of an intermediate one, as it appears to be, there could scarcely be any doubt of the right of the prosecution to introduce testimony of the subsequent transactions, in order to show guilty knowledge on the part of the defendants when they received the stolen property in the first transaction. "It is immaterial," says Mr. Underhill, in his Criminal Evidence, section 88, "(at least where the evidence of another crime is offered to show guilty intent or knowledge) that the other crime was committed before or after the crime for which the accused is on trial." Says the New York court, "On the trial of a person charged with receiving stolen goods, it may be shown that before and after the time of the alleged crime he received other stolen goods from the same party." *People v. Shulman,* reported in note to *Mayer v. People,* 80 N. Y., 364, 373, and cases there cited. See, also, *Williams v. People,* 46 N. E. Rep. [Ill.], 749. It was not error to admit evidence of the subsequent transactions between the witness White and the defendants, related as they were to the principal offense charged, as to time and circumstances, as closely as those occurring prior thereto.

In one of the transactions testified to by the witness White, he spoke of having stolen three horses, some of which he traded for other horses, which were thereafter delivered to the defendants; and it is contended that evidence of the theft of such horses as were not delivered to defendants was inadmissible and prejudicially erroneous. As the record is presented, we do not so regard it. In any view of the subject, testimony of thefts by witness White was only incidental to the main point sought to be estab-

lished,—that is, the receiving of property by the defendants from the witness White, knowing it to have been stolen; and if in some of the deliveries there were included some property for which stolen property had been exchanged, this fact would not justify the exclusion of such testimony for the purpose for which introduced, nor would its admission be erroneous. Much of the evidence of this character was admitted without objection and, therefore, no error could be predicated thereon. Its admission, however, even over objections, can not be regarded as prejudicially erroneous. Complaint is also made because the witness White was permitted to go into details as to the several transactions whereby he claimed to have delivered stolen property to the defendants. We can see no valid objection to this. If the state was permitted to offer proof regarding these collateral transactions to prove *scienter,* it was required to show that the property was stolen and delivered to the defendants as such, and under such circumstances as to warrant the jury in drawing the inference that the defendants had guilty knowledge of the character of the property received by them, which is described in the information in the case at bar. In proving the collateral transactions there was involved, of necessity, the detailing of the events required to establish the fact that the property was stolen and delivered to the defendants as such. To do this, of course, all incidental facts leading up to the main transaction were properly admissible in evidence.

Error is also sought to be predicated on the giving and refusal of certain instructions to the jury by the trial court. It is said that instruction No. 11 given to the jury is erroneous, because the essential element of knowledge that the property was stolen is entirely omitted from the instruction. The instruction is as follows: "Some evidence has been offered and received in this case tending to show that the defendants have shortly prior and subsequently to November, 1900, received or bought stolen horses, other than those involved in this case, and in this con-

nection you are instructed that this testimony has been allowed only for the purpose of throwing light on the question as to whether or not the defendants knew the animals involved in this case were stolen at the time they were received on November 20, 1900. If you find said animals were received by the defendants or either of them at or about said time, and if you find from the evidence in this case that other stolen horses or mules have been received or bought by the defendants or either of them shortly prior or subsequently to November 20, 1900, then you have a right to consider such facts in determining whether or not the defendants or either of them, knew that the animals involved in this case were stolen at the time they received the said animals, if you find the defendants or either of them did receive said animals or either of them." We do not understand the rule to be that in proving guilty knowledge by offering evidence of other transactions with which the same parties are connected, it is required that it be shown not only that at other times stolen property was received, but also there must be proof of guilty knowledge in the collateral transactions in order to justify the inference that in the principal case the defendants had guilty knowledge of the stolen character of the property received. The rule is that proof of the receipt from the same person at other times of stolen property may warrant the inference of guilty knowledge in the case on trial, and this is what the jury were told by the instruction complained of. To construe the law as contended for would defeat the very object of the rule. It would in many instances render it impossible to establish the *scienter* in the principal offense charged. The law permits proof of the collateral offenses,—that is, permits the prosecution to show that the defendant had received at other times stolen property from the same person,—for the purpose of authorizing the jury to infer guilty knowledge in the receipt of the property for which he is charged, and not to establish guilty knowledge in each of the collateral transactions. The law justifies the inference of guilty

knowledge upon proof of other receivings of stolen property from the hands of the same party, even though there be no direct proof of guilty knowledge in the collateral transactions.

Several of the instructions excepted to by defendants deal with the elements constituting the crime of receiving stolen property.  One of them, instruction No. 14, given at the request of the state, is as follows: "The jury are instructed, that if you believe from the evidence, beyond a reasonable doubt, that the defendants in Nemaha county, Nebraska, on November 20, 1900, received or bought the mule, or any or all of the horses described in the information, knowing them or any of them to have been stolen, then it is immaterial from whom they were received or bought.  The buying and receiving, knowing them to have been stolen is the material part; and if you believe from the evidence, beyond a reasonable doubt, that the defendants bought or received the mule, or horses, or any of them from any person whatsoever, knowing them to have been stolen, then you should find the defendants guilty as charged."  This instruction authorized the jury to find defendants guilty regardless of the intent and purpose with which the horses were received, and we can not escape the conclusion that the giving of it was reversible error. It was decided in *Darrah v. State,* 65 Nebr., 201, that an intent to defraud is an essential element of the crime of receiving stolen property.  And in *Heldt v. State,* 20 Nebr., 492, an instruction which, upon undisputed evidence, assumed the existence of a material fact, was condemned on the ground that it invaded the province of the jury, which is the only tribunal invested by law with jurisdiction to determine the issue, or any of the questions of fact involved in the issue, raised by a plea of not guilty to an information charging a felony.  4 Blackstone, Commentaries, 349; 2 Hale P. C., 161; *Williams v. State,* 12 Ohio St., 622; *Harris v. People,* 128 Ill., 585; *Cancemi v. People,* 18 N. Y., 128.

The court, in the sixth paragraph of the general charge,

correctly set forth the material allegations of the information, and advised the jury that each and all of them would have to be established by the evidence beyond a reasonable doubt. But in the eighth paragraph it is said that if defendants received one or more of the animals described in the information, "with the knowledge that such animal or animals were stolen, then a case has been made against them and your verdict in that case should be 'guilty.'"

The tenth instruction is in this language: "In this case there has been no direct testimony offered tending to show a purpose to defraud which is alleged in the information; but in this connection you are instructed that if you find beyond a reasonable doubt that the defendants purchased the horses mentioned in the information, or any of them, on or about the time alleged in said information, and purchased them with knowledge that they were stolen horses, then the intent to defraud will be presumed and no direct testimony is necessary upon the question of intent."

In the thirteenth instruction given at the instance of the state, the jury were further advised that buying or receiving stolen horses, knowing them to have been stolen, constitutes a single offense, and that if defendants either bought or received any of the animals described in the information, knowing the same to have been stolen, they should be found guilty as charged.

So it appears that by iterative instructions the court pressed hard upon the jury the thought that it was their duty to convict if satisfied beyond a reasonable doubt (1) that the horses had been stolen; and (2) that defendants, at the time they got possession, had knowledge of the theft. In no instruction was it directly and positively stated that the jury could not return a verdict against defendants without first finding from the evidence the existence of a fraudulent intent. Evidently the court did not consider such a finding essential, for in the tenth paragraph of the charge it is, in effect, said that the law would presume a criminal intent if the other elements of the offense were proved. The jury would, of course, have been warranted

in inferring the intent to defraud; but the duty of making the proper inference from the facts proved rested upon them, and not upon the court. There is in such case no absolute and arbitrary deduction. There is neither a conclusive nor disputable presumption of law. For the error committed by the court in taking away from the jury the question of fraudulent intent, and authorizing them to find defendants guilty without finding that the intent charged was proved by the evidence beyond a reasonable doubt, the sentence must be reversed, although there is much reason to suppose the result of the trial would have been the same if the case had been submitted under proper instructions.

One further question remains to be considered. It is claimed that a fatal variance exists between the information and the proof with respect to one of the animals which the defendants were charged with receiving. The animal is described in the information as a bay gelding, with both hind feet white. The animal is also described as having a small star in forehead, close built, with weight and age given. Some of the witnesses described the animal as a brown, and some as a bay or brown. It also appears that the animal had but one white hind foot. We do not think the variance between the proof and the information of such a substantial character as to render it fatal. When a witness described the animal as a brown or bay, it becomes evident the color is not so pronounced as to determine its identification; nor do we regard the variance as to the animal having but one white hind foot as fatal. The horse was described with unnecessary particularity, and at the common law the description would be regarded as essential to identity, and the descriptive averment would have to be proved as laid, but in this state the common-law rule has been materially changed by statute. Section 413 of the Criminal Code declares that: "Whenever on trial of any indictment for any offense there shall appear to be any variance between the statement in such indictment, and the evidence offered in proof thereof in the Christian

name or surname, or both Christian name and surname
or other description whatever of any person whomsoever
therein named or described, or in the name or description
of any matter or thing whatsoever therein named or de-
scribed, such variance shall not be deemed ground for an
acquittal of the defendant, unless the court before which
the trial shall be had shall find that such variance is ma-
terial to the merits of the case or may be prejudicial to the
defendant." This section does away with all objections
that are merely technical, and do not affect the substantial
rights of the defendant. It requires that every objection
grounded upon an alleged difference between a descriptive
averment and the evidence given in support thereof shall
be disregarded, unless the difference is so material as to
mislead the defendant and prejudice him in making his
defense. In this case the variance was inconsequential,
and the court did not err in so considering it.

With respect to the claim of counsel for defendants that
the evidence did not justify a conviction, it is sufficient to
say that but for the error above indicated, the result of the
trial would be unhesitatingly approved.

The judgment is reversed and the cause remanded for
further proceedings.

                                    REVERSED AND REMANDED.

NOTE.—*Criminal Evidence—Proof of Another Offense—Description—Vari-
ance.*—There is a learned discussion of the rules of criminal
evidence governing the admission of the proof of a collateral offense
in *People v. Molineux*, 168 N. Y., 264, 293, 318, Werner, J., although
the writer of this does not accept the conclusion reached in that
case. See, also, *State v. La Page*, 57 N. H., 245. Indictment described
a Smith & Weston revolver; proof showed a Smith & Wesson. Vari-
ance fatal. *Morgan v. State*, 61 Ind., 447.—W. F. B.