WENCEL H. KIRCHMAN V. STATE OF NEBRASKA.

FILED NOVEMBER 20, 1931. No. 27940.

*O'Sullivan & Southard* and *Harlan A. Bryant*, for plaintiff in error.

*C. A. Sorensen, Attorney General*, and *George W. Ayres*, contra.

Heard before GOSS, C. J., ROSE, DEAN, EBERLY, DAY and PAINE, JJ.

GOSS, C. J.

This defendant, tried separately, was charged jointly with Frank J. Kirchman, with making use of a bank to defraud. The indictment had four counts. During the trial the court dismissed the last two counts. The jury found defendant guilty on the first two counts. He was sentenced on each count to ten years' imprisonment and to pay a fine of $1,500, the sentences to run concurrently.

The indictment was drawn under section 8-165, Comp. St. 1929, and is referable to that clause denouncing any officer or agent of any bank "who makes use of the bank

in any manner with intent in either case to injure or defraud the bank or any individual person, company or corporation."

The defendant, Wencel H. Kirchman, was cashier, and Frank J. Kirchman was president, of the Nebraska State Savings Bank and of the Saunders County National Bank, operated at Wahoo. Count one charged intent to defraud the savings bank and Esther Anderson, and count two charged intent to defraud said "banking corporations" and Selma Edoff, in both counts, by use of the savings bank and in a manner fully set forth in the indictment. Briefly stated, funds of these parties having been invested in a certain mortgage loan taken in the name of the savings bank, it was charged that defendants, as officers of the savings bank, assigned the bonds and mortgages to the national bank and later sold and assigned these instruments to the First National Bank of Lincoln, an innocent purchaser.

The first error assigned and relied on is that the court overruled defendant's application for a change of venue to some adjoining county. The defendant filed affidavits of 67 persons, residing in various precincts, reciting that Wencel H. Kirchman has been made defendant in 13 criminal cases instituted in the county, growing out of bank failures in six banks named and known as the chain of Kirchman banks, with deposits of over $3,000,000 at the time they were closed; that there were many prosecutions of others arising out of these failures; that there had been much discussion among the people generally and a great amount of news items and editorial comment in prominent newspapers in the county; that the affiants know there is a very bitter feeling and strong prejudice against the defendant in every part of the country, by reason of which he cannot have a fair trial in the county. These affidavits, each about five pages of typed matter, seem to be identical except that blank spaces were left so as to vary the name, residence and length thereof, of the individual signer. In addition thereto the showing indicates matter published in various papers in the county. The showing of the state,

in resistance, contains 157 affidavits attempting to disclose the other side of the shield and indicating the belief that citizens eligible to jury service in the communities in which the respective affiants live are good, fair-minded, upright citizens, well disposed toward justice and to a fair and impartial trial; and that the affiants believe there is no appreciable feeling, if any, against defendant. These affidavits are likewise almost identical in language.

Under the Constitution, defendant was guaranteed a fair trial by an impartial jury. Whether such a jury was obtainable in the jurisdiction must, of course, first be decided by the trial court. It is the rule that "A motion for a change of venue in a criminal prosecution is addressed to the sound discretion of the trial court, and unless there has been an abuse thereof, its ruling on the motion cannot be disturbed." *Goldsberry v. State,* 66 Neb. 312; *Sweet v. State,* 75 Neb. 263; *Clarence v. State,* 89 Neb. 762; *Lucas v. State,* 75 Neb. 11.

The basic question to be passed on by the jury in this case was very simple. It did not depend on the wrecking of any bank or banks. It was whether the defendant used the bank to defraud these women out of their mortgage and notes secured thereby. There is nothing in the general banking situation in Saunders county, as shown by the record, indicating with legal certainty that it made a fair jury unobtainable. The answers of the jury upon their *voir dire* examination do not show on their face any bias or prejudice of the jurors chosen. Only 23 were examined as prospective jurors. Out of the 12 selected none had lost money in bank failures. The trial judge observed these jurors and heard their examination. We find in the record no cause for concluding that he abused his discretion. The ruling refusing a change of venue will not be disturbed.

Defendant filed a motion to quash the indictment and, when it was overruled, filed a demurrer based on the same points, which was likewise overruled. We have carefully examined the indictment. Without taking space to analyze the allegations, suffice it to say the first count is thoroughly good as against these legal attacks; while the second count

contains an erroneous date of a certain assignment of the mortgage—which date was correctly stated in the first count—and charges an intent to defraud the banks as well as Mrs. Edoff, we think that, even if these were material, the defendant has not been prejudiced by failure to sustain the motion or demurrer as to the second count. For the evidence as to the correct date was properly received in proof of the first count; the Edoff note and the Anderson note were secured by the same mortgage; and the sentence on the second count was made to run concurrently with that on the first count. Evidence received on the second count was not prejudicial to defendant on the first count. The defendant can serve in the penitentiary only once by reason of the conviction under this indictment.

Defendant argues that the evidence was insufficient. He was administrator of the estate of Carl J. Edoff from his appointment in 1922 until its settlement in the spring of 1927. On May 2, 1927, he paid Selma Edoff, the widow, $5,718.55, and Esther Anderson, the daughter, $1,906.20, pursuant to the decree of distribution. They separately deposited these amounts in the Saunders County National Bank and requested defendant to negotiate loans for their money on farm lands near Mead, where they lived. On September 10, 1927, $1,500 of Esther Anderson's money and $4,000 of Selma Edoff's money was loaned to Otto B. Tegelberg and Janet M. Tegelberg on a mortgage on their farm, securing two notes or coupon bonds for the above amounts. The notes and mortgage ran in favor of the Nebraska State Savings Bank. Neither the mortgage nor the notes were ever assigned to the true owners. When they were informed that their money was loaned on this security they asked for the papers. Defendant told them they were the owners of the bonds but that the bank would keep the papers for them. The notes and mortgage were not turned over to them. As the interest coupons became due the interest was paid by the mortgagors to the bank and each of the owners received her interest until the banks closed. Under date of September 10, 1927, defendant gave them receipts generally describing the loans and reciting

that the mortgage and securities were "held by this bank in trust for the benefit" of the respective owner. He executed this receipt in the name of the Saunders County National Bank, by himself personally. On October 2, 1929, the Nebraska State Savings Bank, without authority from or knowledge of the real owners, assigned the Tegelberg mortgage to Saunders County National Bank. Defendant, as cashier of the savings bank, joined in the execution of the instrument and acknowledged it as such officer. Fifteen days later the national bank duly assigned this mortgage and others (totaling $24,000) to the First National Bank of Lincoln. Defendant, as cashier of the grantor, joined in the execution of the instrument, and duly acknowledged it. The two notes for $1,500 and $4,000 were assigned in blank by the savings bank by Frank J. Kirchman, president. They were negotiable by delivery and went to the First National Bank as an innocent purchaser and holder for value, when they were delivered with the assigned mortgage. The two banks have been closed. The trusts in favor of Esther Anderson and Selma Edoff were violated. They have been defrauded out of their money. The defendant made use of the savings bank at the time he joined in the assignment of the mortgage to the national bank and when the notes were transferred to it. The court (among other elements) strongly instructed the jury that the state must have proved by the evidence beyond a reasonable doubt that the defendant had "the intent wilfully, knowingly, unlawfully, fraudulently and feloniously to injure and defraud." Applicable to defendant's testimony that he merely joined in the executive act of the assignment of the mortgage at the request of Frank J. Kirchman and did not know the import of his signature and acknowledgment, the trial court further instructed the jury that they must acquit the defendant unless they found from the evidence that, when he signed the assignment, and when the transfer of the bonds was made to the Saunders County National Bank, he "wilfully did the same, knowing that said mortgage and bonds at the time were the property of Selma Edoff and Esther Anderson or either of them."

The issues were those of fact for the jury. The evidence was amply sufficient to support the verdict.

Some other assignments relate to instructions. We have considered them and find there was no prejudicial error. To discuss them would be of no value to the parties and would unduly extend this opinion.

The judgment of the district court is.

AFFIRMED.