STATE OF NEBRASKA, APPELLEE, V.
JOHN R. ELLIS, APPELLANT.

303 N.W.2d 741

Filed March 27, 1981.  No. 42954.

Robert B. Creager of Berry, Anderson & Creager for appellant.

Paul L. Douglas, Attorney General, and Sharon M. Lindgren for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

PER CURIAM.

John R. Ellis appeals to this court from his conviction by the jury of the manslaughter of Deborah A. Forycki. He alleges as principal grounds for reversal: (1) That the Lancaster County District Court lacked jurisdiction to try the action because of improper venue; (2) That the court erred in submitting the case to the jury on the charges of first and second degree murder; (3) That the trial court erred in admitting evidence of other crimes, wrongs, or bad acts committed by him; (4) That the court erred in failing to strike a prospective juror for cause; (5) That it was error to limit his cross-examination of certain witnesses; (6) That error was committed by the admission of purported hearsay testimony; (7) That the trial court erred in failing to grant a mistrial based on the claim of prosecutorial

misconduct; and, finally, (8) That the court erred in over-ruling defendant's motions to dismiss and for a directed verdict. We affirm the District Court.

We first review the facts of this case as revealed by the record, recognizing that most of the evidence adduced was circumstantial in nature. The record is undisputed that Forycki was last seen on October 3, 1974, in Lancaster County, Nebraska, and that her skeletal remains were found in Cass County, Nebraska, on September 13, 1978. At the time of her disappearance, Forycki was a senior at the University of Nebraska-Lincoln, who worked part time at a downtown Lincoln store. On the date of her disappearance, Forycki was to meet a friend for lunch around 11:30 and then be at her place of employment at around 1 o'clock. She was observed leaving her apartment around 11 o'clock that morning, walking toward the downtown area as was her custom, because she did not own or have access to an automobile. She failed to keep her luncheon engagement that day and was never seen or heard from again.

As was previously mentioned, her remains were discovered in Cass County, Nebraska, on September 13, 1978. The skeleton was found inside an antique water wagon which was being prepared for restoration. The water tank atop the wagon's running gear was approximately 10 feet long by 3 feet wide, having a covered top, the opening therein being roughly 2 feet by 2½ feet. The skeleton was found beneath three logs, 5 feet long and 4 inches in diameter, which were apparently sawed at the ends. Atop these logs were two to three sticks, 4 inches in diameter, and an undetermined number of other sticks 2 inches in diameter. Wedged tightly in the opening of the water tank was a roll of woven wire fencing. The water tank had several holes in its sides which were identified as bullet holes, although the date of the making of such holes and the caliber of weapons involved were not definitely determined.

The skeleton was removed from the water tank by an anthropologist using standard techniques. Before

removal, the skeleton was observed to be in roughly anatomical position, lying on its back; the feet extended and together; left arm along the left side, with the left hand where the hip would be; right arm pulled up, with the right hand, facing palm up, where the right ear would be; head slightly turned to the right. The skull was located approximately 1½ feet from the end of the water tank, the abdominal section of the skeleton being located beneath the opening in the top of the water tank. The skeleton showed no signs of trauma or force applied to fracture the bones, with the following exception: The right thumb bone and the right radius at the wrist end had apparent defects.

The cause of the defects was undetermined. A forensic scientist who examined the bones believed the defects were consistent with having been formed by a bullet. The anthropologist was of the opinion that the defects were not caused by a bullet. Notwithstanding the dispute as to the cause of defects, the county coroner's physician testified that a wound to the wrist or finger was usually not mortal.

No jewelry, fasteners, zippers, clasps, buckles, or shoes were found in the water tank. A lead object, which exhibited characteristics of a .22-caliber bullet from a rimfire cartridge, was found beneath the skeleton in the abdominal area where the left kidney would have been had the body not been decomposed. While no cause of death could specifically be established by any witness, the county coroner's physician was allowed to testify, over objection, that the skeleton did not show any evidence of fractures, tumors, or healed fractures; of death from natural disease processes; or of death from an accident caused by force applied to bones to fracture them. However, he could not make a determination of the specific and immediate cause of death from an examination of the skeleton.

Evidence with regard to whether Forycki might have committed suicide was also introduced. Following a description of the observable characteristics which a

person with suicidal intent or tendencies exhibits, a psychiatrist, whose specialty was in the area of depression and manic-depressive illnesses, testified that he did not believe Forycki was suicidal at the time of her disappearance. This opinion was in answer to a hypothetical question which ostensibly included the observations of her roommate, friends, family, and acquaintances with regard to Forycki's demeanor prior to her disappearance. He further examined a writing made by Forycki on October 2, 1974, from which he said "describes the young lady who although is having transient problems is functioning in my estimation normally."

A second psychiatrist disagreed with the above-mentioned witness in certain respects. He acknowledged, after reading a transcript of the first psychiatrist's testimony, that the characteristics described by the latter were classical symptoms of a *type* of depression. However, he testified such characteristics were not commonly found in younger people, and, further, there are other types of depression. Moreover, he was of the opinion that Forycki *could* have committed suicide, noting that a person would not write a note similar to that written by Forycki on October 2, 1974, unless the person was upset. He further stated that Forycki was certainly depressed.

In addition to the foregoing, the State presented evidence to establish a connection between Ellis and Forycki. Business records with regard to the class schedules of Ellis and Forycki at the University of Nebraska-Lincoln were introduced. The records revealed that Ellis and Forycki had classes which apparently met the same 3 days a week on the same floor of the same building at the same time of day in the spring of 1974. Testimony from a police officer who investigated the building in 1978 indicated that the numbered classrooms which corresponded to those wherein Ellis and Forycki had classes in 1974 were 60 to 70 feet apart. Class schedules covering the fall of 1974

indicate that Forycki and Ellis had classes 3 days a week in the same building at the same time of the day, although on different floors of the building.

Ellis was enrolled in a class which met on Tuesday and Thursday afternoons during the fall of 1974. His instructor for that class testified that, although she had no independent recollection of the day, Ellis was absent from class on the first Thursday in October, which was October 3rd, according to her records.

A short time after her disappearance on October 3, 1974, a police officer found a note while examining Forycki's possessions. The note, which was subsequently misplaced by the police so that its whereabouts were unknown at the time of trial, was undated. The police officer testified, over objection, that the contents of the note were as follows: "Meet John Kondowski 10:30 at the Student Union." Subsequent investigation failed to reveal the existence of any person by that name in Lincoln.

In October of 1974, Ellis met a woman who was attending the University of Nebraska-Lincoln, with whom he used the alias of "John Tronzowski." A search of university records and of directories of the area failed to reveal a person by either the name of "Kondowski" or "Tronzowski." The woman appeared at trial and testified, over objection, as to the details of a breakfast date which she had with Ellis on October 17, 1974. According to her, when she met him that particular morning, he had a piece of rope trailing from his jacket pocket, which he explained as being used for some class that he was taking. Ellis was rather vague as to where they were going, only saying that a friend had given him permission to use his house where they could cook ham and eggs. It was, in fact, a house rented by Ellis. During the early part of their stay at this house, Ellis brought out some apples which he was cutting with a large knife. He made some advances toward this young woman, which she resisted, and he then grabbed her arm with one hand and the knife with the other,

which he held near the level of her throat. He then stuffed a handkerchief in her mouth which she wiggled free, and he then told her to get down on the floor, and threatened to break her arm if she screamed. However, she did scream and became hysterical, and finally was able to leave the house. The police were informed of the incident, but charges were not filed.

The testimony of another witness with reference to her experience with Ellis in 1976, approximately 2 years after Forycki's disappearance, was adduced. This witness testified, over defendant's objection, that in the later afternoon of June 10 she received a telephone call from Ellis making a date with her for that evening to eat at a certain restaurant located on East O Street in Lincoln. He at first suggested that she meet him there in the parking lot, but she insisted that he pick her up at her residence. He then called a second time and arranged for her to meet him at the sidewalk in front of her residence. She then got into his automobile. She was not certain whether it was at that time or during the second phone call that he told her they were going to a barbecue at a friend's house out in the country near Elmwood, instead of to the restaurant.

After turning off the main highway south of Elmwood, Ellis all of a sudden turned into a farm road which was screened on either side by high weeds and trees. Shortly after they stopped, the witness saw or felt a knife at her neck, and Ellis then grabbed the top of her hair and pulled it tightly and tried to grab her left arm and pull it behind her. She managed to struggle free and grabbed the blade of the knife. After some calmer discussion between them, the knife was dropped outside the car. The witness then suggested going into Elmwood, which apparently enraged Ellis, who again grabbed the top of her hair, clutched her arm, and forced it behind her neck. He pushed her down on her knees to the floor of the car and tied her arms behind her back. He then tried to place masking tape over her mouth, but she commenced to scream. This seemed to

cause a change in attitude in Ellis, and he freed her bonds, and they drove to Elmwood where the witness was able to leave Ellis' car.

The assault on this witness occurred within 75 feet of the location of the water wagon containing the remains of Forycki. Charges were filed against Ellis, and he was convicted and sentenced to jail time in Cass County for this assault.

The location of the antique water wagon was approximately 20 miles from Lincoln. Ellis did not own an automobile in 1974. However, his wife, whom he married on June 6, 1974, owned an automobile that he had access to and use of. Subsequent investigation of the automobile revealed the presence of certain hairs which, according to the testimony of an expert witness, exhibited the same characteristics as that of Forycki's. There was testimony, however, that the hairs might also have come from the daughter of Ellis' wife from a prior marriage who had access to the automobile.

Further evidence with reference to Ellis' familiarity of the Elmwood area was adduced. A cellmate of Ellis' during his incarceration for the 1976 assault testified that Ellis stated that the people in Elmwood were really stupid; and that "if you ever killed somebody and wanted to hide the body, that would be a really good place to do it, that the police would never find it." Ellis further allegedly stated to this witness that he had found a secluded place outside Elmwood to which he had taken people from college on occasions.

Finally, evidence was adduced with reference to statements made by Ellis during an interrogation just prior to his arrest in Evanston, Illinois, for the homicide. The police officers testified that initially Ellis was told that they wanted to talk to him about the death of Deborah Ann Forycki, and he replied that he would like to meditate. A period of meditation of approximately 20 minutes passed, and he was again asked about her death, this time specifically as to whether he, Ellis, was present when she died. His reply, according

to the testimony, was that he could not do anything that brutal. This statement was made even though no details regarding the finding of her skeleton were made known to Ellis at the time. Another officer who interviewed Ellis separately testified that he had accused the defendant three times of causing the death of Deborah Forycki and the first two times no response was noted. The third time Ellis replied that "he had put that part of his life out of his mind."

One of the officers testified that Ellis, when told that the police knew that he had been involved in offenses against young women, and specifically the incidents involving the two female witnesses previously mentioned, replied that he was "beginning a new life in Evanston and that was a part of his life that he was putting out of his mind and would not remember that portion of his life." He was then asked, according to the officer, if he had killed anyone, could he put that out of his mind; and he replied, "I think so."

Ellis did not testify in his own behalf at trial. However, evidence with regard to Forycki's emotional state prior to her disappearance was adduced. An instructor of a class which she had in the fall of 1974 and a friend both testified that Forycki had exhibited a marked change in attitude within the week before her disappearance. The friend further testified that Forycki had been depressed for much of September 1974. Finally, an acquaintance of Forycki testified that she had seen Forycki between 12 o'clock and 12:30 p.m. on October 3, 1974, in a downtown Lincoln store. However, rebuttal evidence indicated that the witness might have seen Forycki on October 2, 1974, the day prior to her disappearance.

The jury was instructed on the crimes of first degree murder, second degree murder, and manslaughter. Following deliberation, the jury returned a verdict finding Ellis guilty of manslaughter. The court sentenced Ellis to a term of imprisonment of 10 years. Ellis has appealed to this court, assigning various errors to the trial

proceedings, as were earlier set forth.

We first discuss Ellis' contention that the court lacked jurisdiction to try the case because of improper venue of the crime, and that the proper venue should have been in Cass County where the body was found. In *Hawkins v. State*, 60 Neb. 380, 83 N.W. 198 (1900), this court held that in a prosecution for murder, evidence of the finding of the body of the person alleged to have been murdered, in an old well which had been subsequently filled, situated in Frontier County, was sufficient, *in the absence of other proof*, to warrant the jury in concluding the homicide was committed in that county. That case, however, was decided prior to our current statute with reference to venue in criminal cases. Our Legislature has provided that all criminal cases shall be tried in the county where the offense was committed, with certain exceptions, one of which is: "If any person shall commit an offense against the person of another, such accused person may be tried in the county in which the offense is committed, or in any county into or out of which the person upon whom the offense was committed may, in the prosecution of the offense, have been brought, or in which an act is done by the accused in instigating, procuring, promoting, or aiding in the commission of the offense, or in aiding, abetting, or procuring another to commit such offense." Neb. Rev. Stat. § 29-1301.01 (Reissue 1979).

The evidence is clear from the record that Forycki left her home in Lincoln on the morning of October 3, 1974, with every intention of returning that evening. She had a luncheon engagement with another person, which she failed to keep, contrary to her stated plans and inherent characteristics and habits of being prompt, reliable, and, as testified to, always early for her appointments. Her body was found in a secluded area in Cass County of which she apparently had no knowledge. In addition, she had no automobile or means of transportation of her own, and it is therefore fairly inferable that she was taken from Lincoln to Cass

County by someone. In addition, it is clear from the evidence that when her body was found in the water wagon there was no clothing, jewelry, or articles of adornment found in the water wagon with her remains. This lack of clothing, considered in connection with her reputation for promptness and her clear intention of returning to her home that evening, would permit the conclusion that Forycki was taken from Lincoln to Cass County for criminal purposes by someone, and the trial court so found. It has long been the established rule in this state that questions of venue may be established by circumstantial evidence as well as direct evidence. See, *Clark v. State*, 151 Neb. 348, 37 N.W.2d 601 (1949); *State v. Laflin*, 201 Neb. 824, 272 N.W.2d 376 (1978). While there was no direct evidence that Ellis transported Forycki to Cass County on that date, there is evidence that he was absent from class on that date and, also, that hairs were found in the automobile used by him which exhibited the same characteristics as hairs taken from Forycki. We therefore believe that there was ample evidence sustaining the action of the court in refusing to dismiss the action on grounds of venue.

Ellis also contends that the court erred in submitting the case to the jury on charges of first and second degree murder. He does not assign as error the court's instruction with reference to the crime of manslaughter. We believe the court was proper in submitting all three degrees of homicide for the determination of the jury. In *Bourne v. State*, 116 Neb. 141, 216 N.W. 173 (1927), we held that, ordinarily, in a case charging first degree murder, where there is no eyewitness to the act, and the evidence is largely circumstantial, the jury should be instructed as to the law governing murder in the first degree, second degree, and manslaughter. Likewise, in *Moore v. State*, 148 Neb. 747, 29 N.W.2d 366 (1947), we held that where an information charges the crime of murder in the first degree, murder in the second degree and manslaughter are included in the charge, the degree ordinarily being for the jury, and where the

evidence and circumstances of the killing are such that different inferences may properly be drawn therefrom as to the degrees, it becomes the duty of the court to submit the different degrees to the jury for them to draw the inferences. See, also, *Vanderheiden v. State*, 156 Neb. 735, 57 N.W.2d 761 (1953); *State v. Marion*, 174 Neb. 698, 119 N.W.2d 164 (1963); *Kraus v. State*, 102 Neb. 690, 169 N.W. 3 (1918). In view of the fact that in this case there were no eyewitnesses to the death of Forycki, and that the evidence adduced was largely circumstantial, the court was correct in instructing the jury as to the law governing murder in the first degree, second degree, and manslaughter.

Ellis principally contends that the trial court comitted error in admitting evidence of other crimes, wrongs, or bad acts committed by him. The statutory rule with regard to admissibility of such evidence is: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Neb. Rev. Stat. § 27-404(2) (Reissue 1979).

The evidence of which the defendant complains, of course, is that of the two assaults as reflected by the testimony of the two young women, earlier set forth in some detail in this opinion. The evidence was introduced, it would seem, to prove the identity of the assailant of Miss Forycki, knowledge by the defendant of the secluded area where the victim's body was found, and plan or scheme or modus operandi.

"The 'other-crimes' rule is a rule of relevance and such evidence is ordinarily prejudicial because prior criminal activity is irrelevant to the proof of the commission of a specific crime. Where such evidence, however, is in fact relevant the 'other-crimes' rule does not apply. As recently as in State v. Knecht, 181 Neb. 149, 147 N.W.2d 167, we stated the rule as follows: 'The

defendant cites cases holding that a mistrial should be granted where evidence of other crimes is brought into the record. It is not necessary to discuss these cases here. It is competent for the prosecution to put in evidence all relevant facts and circumstances which tend to establish any of the constituent elements of the crime with which the accused is charged even though such facts and circumstances may prove or tend to prove that the defendant committed other crimes.'" *State v. Riley*, 182 Neb. 300, 305, 154 N.W.2d 741, 744 (1967). See, also, *State v. Nielsen*, 203 Neb. 847, 280 N.W.2d 904 (1979). And it is no answer for the defendant to claim that the evidence as to knowledge of the location was unnecessary because the witness Burns had already testified that Ellis had knowledge of the area. This fact should not and does not foreclose the State's introduction of additional evidence on a disputed question of fact. It is elementary that a plea of not guilty places in issue every relevant fact to prove the State's case, and until and unless the trial court, in the exercise of its discretion, determines that further evidence on a point is irrelevant, the State is entitled to attempt to prove its case.

As stated in *People v. Condon*, 26 N.Y.2d 139, 142, 257 N.E.2d 615, 616, 309 N.Y.S.2d 152 (1970): "[S]o long as the evidence adduced as to the Suffolk County crime was relevant on the issue of identity, the People should not have been precluded from introducing evidence of that crime merely because there was some other evidence in the case tending to establish the identity of the defendant."

This court does not require that the prior or subsequent activity be identical to the act charged to be admissible. As stated by the Eighth Circuit Court of Appeals: "It is enough that the evidence be of similar involvement reasonably related to the offending conduct and be presented in a manner in which prejudice does not outweigh its probative value." *United States v. Gocke*, 507 F.2d 820, 825 (8th Cir. 1974). Section

27-404(2) is identical to Fed. R. Evid. 404(b). The advisory committee's note to that rule states: "The determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence, in view of the availability of other means of proof and other factors appropriate for making decisions of this kind under Rule 403." *Id.* at 92.

The trial court must balance between the danger of unfair prejudice to the defendant and the probative value of that evidence. It is for this court to determine whether the trial court abused its discretion, taking into consideration all factors and other means of proof. The defendant contends that the admission of the two independent assaults was prejudicial because of an alleged lack of other reliable evidence of the defendant's guilt.

"[A] purported showing of a paucity of evidence does not prove that trial court abused its discretion in balancing the probative value against prejudicial effect of a particular item of disputed evidence. . . . In fact, a lack of other relevant evidence may in some instances increase the probative value of the evidence available. [Citations omitted.]" *State v. Cott*, 283 N.W.2d 324, 329 (Iowa 1979). All factors must be put in the balance, and the trial court has a large amount of discretion in this regard.

This court has consistently stated the rule that the admissibility of evidence of other crimes lies within the discretion of the trial court. *State v. Costello*, 199 Neb. 43, 256 N.W.2d 97 (1977); *State v. Moore*, 197 Neb. 294, 249 N.W.2d 200 (1976); *State v. Ray*, 191 Neb. 702, 217 N.W.2d 176 (1974).

"The extent to which the discretion of the trial court will be allowed to be exercised in this regard has not been fixed by any decision of this court. Probably it cannot be but depends upon the facts in each case. . . . In State v. Siddoway, 61 Utah 189, 211 P. 968, it was held: 'No exact limitation of time can be fixed as to when another offense tending to prove the intent of the act

charged is remote. The decision of that question must depend upon the circumstances of the particular case, and whether evidence is too remote or not is a question whose decision is largely in the sound discretion of the trial court.' [Citations omitted.] The doctrine generally accepted is that remoteness in point of time may weaken the evidential value of the evidence but does not justify its exclusion. [Citations omitted.]

*"Likewise it is a matter left to the discretion of the trial court as to whether the prior offenses are sufficiently similar to the one charged in the case on trial so that evidence thereof has probative value."* Sall v. State, 157 Neb. 688, 697-98, 61 N.W.2d 256, 262 (1953). (Emphasis supplied.)

It cannot seriously be contended that the other offenses must have preceded the principal charge as to time of occurrence. *The State v. King*, 111 Kan. 140, 206 P. 883 (1922). Likewise, there is no magic in the amount of time by which the other offenses must have preceded or followed the case being tried, e.g., a period of 15 months did not affect the relevancy of the evidence. *Umbaugh v. Hutto*, 486 F.2d 904 (8th Cir. 1973).

We are well aware of the responsibility which falls upon the shoulders of the judicial system to protect the rights of a defendant in excluding evidence whose probative value is far outweighed by its unfair prejudice. However, it is no answer for us to stick our heads in the sands of caution and exclude all evidence of other crimes because of the mere possibility of prejudice. After all, any evidence offered by the prosecution in a criminal case is assumed to be prejudicial, otherwise it would not be offered. Nevertheless, as stated in 70 Yale L.J. 763, 773 (1961): "[W]here the highly prejudicial evidence also has great probative worth and plays a crucial role in the prosecutor's case, exclusion of the evidence may destroy his case and result in an unjustified acquittal." In this instance, we cannot say that the trial court abused its discretion when it determined that the probative value of the evidence of other crimes

in the facts and circumstances of this case was not outweighed by the prejudicial effect. The evidence was properly received.

A juror by the name of Wilson was called as a member of the panel to constitute the jury in this case. Mr. Wilson was at the time of the trial a member of the Lincoln Police Department, and had been for approximately 5 years. He was acquainted with many of the officers who would be testifying and had heard the case discussed to some extent within the department, but had not done any work on it himself. He did state, in answer to questions on voir dire, that it was his opinion that Miss Forycki was murdered, but that he did not have any opinion as to whether or not John Ellis was the one responsible for that murder. Finally, the juror stated that if instructed to do so, he could set aside any opinions about the case that he held at that time. The defendant's challenge for cause was overruled. However, Mr. Wilson was not one of the jurors who was retained on the jury which actually heard the trial.

Neb. Rev. Stat. § 29-2006 (Reissue 1979) provides that it is a good cause for challenge of a juror who has "formed or expressed an opinion as to the *guilt* or innocence *of the accused* . . . ." (Emphasis supplied.) However, the statute goes on to provide that if the juror states under oath that notwithstanding such opinion he can render an impartial verdict, the court may in its discretion "admit such juror . . . as competent to serve in such case." The defendant in his brief concedes that "[t]he granting of a challenge of a prospective juror for cause is within the discretion of the trial court, and is generally not reversed unless clearly wrong." This position is supported by *Bemis v. City of Omaha*, 81 Neb. 352, 116 N.W. 31 (1908); *Ward v. State*, 58 Neb. 719, 79 N.W. 725 (1899); and *Kitts v. State*, 153 Neb. 784, 46 N.W.2d 158 (1951). In *Murphy v. Florida*, 421 U.S. 794, 799-800, 95 S. Ct. 2031, 44 L. Ed. 2d 589 (1975), the Court said: "Qualified jurors need not, however, be totally ignorant of the facts and issues involved.

'To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.' [Citations omitted.]" There is no merit to defendant's complaint.

Defendant also contends that he was unduly restricted in his cross-examination of the witness who testified about being assaulted by the defendant in the Elmwood area. The defendants' counsel attempted to cross-examine her on relationships with Ellis, including past sexual conduct. At the time to be covered in such cross-examination, the witness was married to another man. She claimed her privilege against self-incrimination and public ignominy, and the trial court sustained the objection. This ruling was fully in accord with Neb. Rev. Stat. § 25-1210 (Reissue 1979) which states in part: "When the matter sought to be elicited would tend to render the witness criminally liable, or to expose him to public ignominy, he is not compelled to answer . . . ."

The defendant also complains that the trial court prohibited the defendant from inquiring of the witness Burns as to a prior petit larceny conviction as constituting an act of dishonesty within the meaning of Neb. Rev. Stat. § 27-609 (Reissue 1979). He also claims that he was not permitted to inquire as to the different times that Burns had been in jail before the incident involving the conversation with Ellis about which he testified. The answer to the second contention is that, in the final analysis, the trial court did not direct the defendant's attorney not to make such inquiry, but the defendant chose not to cross-examine Burns in that regard. The other problem, whether the crime of petit larceny is one involving "dishonesty or false statement" within the meaning of § 27-609, cannot be disposed of in such a summary fashion.

At first blush, it might appear that to steal is to be dis-

honest; therefore, larceny is a crime involving dishonesty. However, that conclusion does not necessarily follow. The specific language of § 27-609 was taken from Fed. R. Evid. 609, 28 U.S.C. at 563 (1976). Referring to Notes of Conference Committee, House Report No. 93-1597, we find this language at 565: "By the phrase 'dishonesty and false statement' the Conference means crimes such as perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of crimen falsi, the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify honestly." That report was discussed in *United States v. Smith*, 551 F.2d 348 (D.C. Cir. 1976), and the term "crimen falsi" was defined at 362-63: "Even in its broadest sense, the term 'crimen falsi' has encompassed only those crimes characterized by an element of deceit or deliberate interference with a court's ascertainment of truth." The court then goes on to say at 363-64: "Two recent Third Circuit cases, decided the same day, have argued convincingly that petty larceny is not ordinarily a crime involving dishonesty or false statement under Rule 609(a)(1)."

One of the two cases referred to was *Government of Virgin Islands v. Toto*, 529 F.2d 278 (3d Cir. 1976). At page 281 of that opinion appears the following: "For our purposes here, we have no difficulty in accepting the government's formulation of the concept: 'Although the term "Crimen Falsi" has been subject to many definitions, the generally accepted scope of the term would be crimes that are in the nature of perjury or subornation of perjury, false statement, criminal fraud, embezzlement, false pretense or any other offense the commission of which involves some element of deceitfulness, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully.' Appellee's Brief at 4. Absent special circumstances, and as the district court so aptly put it: *'Petit larceny is just not that.'"*

(Emphasis supplied.) See, also, footnote 3: "It is conceivable that a conviction for petit larceny might subsume a crime in the nature of *crimen falsi*, e.g., 'petit' stealing by false pretenses. There is no indication that the petit larceny involved here was other than ordinary stealing. If appellant's prior conviction was for petit larceny which might be classified as *crimen falsi*, it will be incumbent upon the prosecution to bring that point to the trial court's attention if evidence of the conviction is sought to be introduced on retrial."

Although the statements set out above were dictum in that case, we agree with the reasoning of the court. The defendant, in his offer of proof, having failed to show that the petit larceny offense of which the witness had been convicted involved deceit or deception so as to be classified as "crimen falsi," the District Court was correct in prohibiting its introduction into evidence.

The defendant insists that the testimony of the two witnesses who testified as to the contents of a note containing the name of "John Kondowski," found among Miss Forycki's possessions, should have been excluded as hearsay. Neb. Rev. Stat. § 27-1004 (Reissue 1979) provides in part: "The original is not required, and other evidence of the contents of a writing . . . is admissible if: (1) All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith . . . ." The record supports the admission of the testimony under the authority of that section. However, the defendant urges us to find that note itself constituted hearsay because it was claimed to have been written by Miss Forycki. However, the testimony was not offered to prove the truth of any statement made by the victim, but, rather, that the name "John Kondowski" appeared on a piece of paper in Miss Forycki's handwriting. The evidence of the writing itself supported a logical inference that the two were acquainted and was not hearsay.

We next turn to defendant's complaint of misconduct on the part of the prosecuting attorney in asking certain

questions and in comments made during final summation. We should observe at the outset that this was a very long, complicated, and hard-fought trial, filled with innumerable objections by defense counsel in conscientiously defending his client, which in turn spawned increasingly aggressive questioning by the prosecutor in performing his lawful duties. For example, in the final closing, the county attorney stated that the defense had made him prove every detail of the crime. Defendant urges that this is tantamount to saying that guilt can be inferred because the defense required the State to prove its case, which he insists is an overzealous misstatement of the law. It was that, and it was perhaps a bit unartful. "Although the prosecutor was less than artful at times, it does not appear that his conduct was meant to, or did, inflame the prejudices or excite the passions of the jury against the defendant." *State v. Tiff,* 199 Neb. 519, 529, 260 N.W.2d 296, 302 (1977). Also, one must look to the prior remarks of defense counsel in closing, during which he inquired of the jury, in effect, why did the prosecutor spend so much time in proving the identity of the victim, in proving that she did not die of self-inflicted wounds or of natural causes. One cannot leave questions dangling and then object because answers are attempted. The prosecutor's laudatory remarks about the quality of the investigational work done by the Lincoln Police Department were quite irrelevant, but hardly rise to the level of inflammatory remarks tending to prejudice the jury. The other questions or remarks simply consisted of logical inferences that could be deduced from the record, even though not directly supported by specific evidence. We have examined the record carefully in this regard, and conclude that the remarks complained of did not rise to a level sufficient to have required the granting of defendant's motion for a mistrial. "Whether misconduct on the part of a prosecuting attorney is prejudicial to the defendant depends largely upon the facts of each particular case." *State*

*v. Costello,* 199 Neb. 43, 53, 256 N.W.2d 97, 104 (1977).

Finally, we must examine the defendant's claim that the evidence did not support the jury's verdict and that the court erred in failing to sustain his motion to dismiss or for a directed verdict. The trial court gave as its instruction No. 13, NJI 14.50, concerning circumstantial evidence. We have held that "the law is well settled that a person charged with a crime may be convicted on circumstantial evidence only" but "that if circumstantial evidence is used to convict a defendant in a criminal case, it must be of such weight and character as to establish proof of guilt beyond a reasonable doubt." *State v. Payne,* 205 Neb. 522, 531, 534, 289 N.W.2d 173, 178, 179 (1980).

We have set forth the relevant evidence earlier in this opinion. The following language from *State v. Williams,* 205 Neb. 56, 72-73, 287 N.W.2d 18, 27-28 (1979), is particularly appropriate here: "For almost a century it has been the rule in this state that: 'It is only where there is a total failure of competent proof in a criminal case to support a material allegation in the information, or where the testimony adduced is of so weak or doubtful a character that a conviction based thereon could not be sustained, that the trial court will be justified in directing a verdict of not guilty.' [Citation omitted.]

"While the evidence in this case may be entirely circumstantial . . . there can be no real doubt that it was more than sufficient to go to the jury, and the trial court did not err in overruling the motion for directed verdict."

The defendant's various assignments of error are not sustainable. The judgment and sentence of the District Court are affirmed.

AFFIRMED.

KRIVOSHA, C.J., dissenting.

I must respectfully dissent from the majority in this case. I believe that the majority's conclusions are in error, both with regard to venue properly lying in

Lancaster County and concerning the admissibility of the testimony of two female witnesses involving subsequent acts with the defendant Ellis.

There is no question but that the death of Deborah A. Forycki was tragic and that the perpetrator of the horrible crime must be apprehended and convicted. The tragedy of the death, however, should not cause us to ignore basic rules of evidence in criminal cases. It is because of a case exactly like the instant case that we have developed strict rules of evidence which must be followed in a criminal case.

In the instant case, if the evidence establishes anything, it establishes that the appellant was not guilty of manslaughter, as found by the jury. There is simply no evidence, direct or circumstantial, to establish that the appellant killed Ms. Forycki either upon a sudden quarrel or while in the commission of an unlawful act, either of which element is necessary to establish the crime of manslaughter. Neb. Rev. Stat. § 28-305 (Reissue 1979). The verdict was obviously a compromise verdict and displays the difficulty which the jury obviously had in reaching a conclusion and the prejudice which the testimony of the State's two key witnesses must have created.

I turn first to the matter of venue. As noted by the majority, the trial of a criminal case is to be held in the county in which the crime was committed. Neb. Rev. Stat. § 29-1301 (Reissue 1979). We have, however, by statute, created an exception to the general rule. Neb. Rev. Stat. § 29-1301.01 (Reissue 1979) provides that if a person takes another from one county to another county for the purpose of committing a criminal act, the individual may be tried in the county from which the victim was initially taken. The difficulty with applying that statute to this case, however, is that there is no evidence, either direct or circumstantial, that the accused took the victim from Lancaster County to Cass County. The majority argues that the evidence clearly establishes that the victim did not own an automobile or have any other means of transportation and,

therefore, the only way in which the victim's remains could have been found in Cass County is if the accused took her to Cass County. The evidence, however, shows that the accused did not own an automobile. It is true that he had access to an automobile. Yet, there is no evidence in the record that on the day of Ms. Forycki's disappearance he had in fact exercised that right and had the vehicle in his possession.

But even assuming for the moment that one may infer that the accused took the victim from Lancaster County to Cass County, there is no evidence, direct or circumstantial, that at the time the trip began there was any plan or intent on the part of Ellis to ultimately commit a criminal act in Cass County, thereby satisfying the exception to § 29-1301.01. The majority assumes that the victim went from Lancaster County to Cass County with the accused against her will. Not even reliance upon circumstantial evidence can produce that result. "'"[C]ircumstantial evidence is evidence which, without going directly to prove the existence of a fact, gives rise to a logical inference that such fact does exist."'" *Bland v. Fox*, 172 Neb. 662, 665-66, 111 N.W.2d 537, 540 (1961). Or stated another way, "Circumstantial evidence is that which relates to a *series of facts* other than the fact in issue, which series of facts has been found, by reason of experience, to be so associated with the fact in issue that, in relation of cause and effect, they lead to a satisfactory conclusion." (Emphasis supplied.) 29 Am. Jur. 2d *Evidence* § 4 at 37 (1967). The only "series of facts" which we have in the instant case upon which our conclusion with regard to venue is based is the fact that the remains of Deborah A. Forycki were found in a water tank in Cass County, Nebraska, and there was some hair in a car owned by Ellis' former wife of the type similar to that of either the victim or the former wife's young child. Even assuming one may argue from the "series of facts" that the accused took the victim to Cass County in the automobile, one has no "series of facts" upon which a

jury may reasonably conclude that when the trip began in Lancaster County there was any intent to commit a criminal act in Cass County. We have never heretofore filled gaps in evidence with argument, no matter how logical or persuasive the argument may be.

Furthermore, it would seem that we determine there was venue in Lancaster County *after* we conclude that the accused committed the crime. Generally, venue being a jurisdiction matter, it must be established without regard to whether the individual accused is guilty. See *State v. Laflin*, 201 Neb. 824, 272 N.W.2d 376 (1978). I believe we have extended the exceptions of § 29-1301.01 beyond their reasonable limits. Venue was not properly laid in Lancaster County.

The question of venue, however, is not the most serious problem in this case. While in a criminal case all matters are of importance, I believe that the majority's interpretation of the exceptions to Neb. Rev. Stat. § 27-404(2) (Reissue 1979) is clearly in error and, if permitted to remain the law of this jurisdiction, will have effectively repealed the prohibition created both by statute and case law.

The majority acknowledges that evidence of other crimes, prior or subsequent, is generally inadmissible to prove the character of a person in order to show that he acted in conformity therewith. § 27-404(2). The exceptions are extremely limited. Pursuant to the statute, § 27-404(2), testimony may be offered for the purpose of showing (1) motive, (2) opportunity, (3) intent, (4) preparation, (5) plan, (6) knowledge, (7) identity, or (8) absence of mistake or accident. Taking each of the items listed one at a time, and carefully examining them, will quickly disclose that none of them have application to this case. We turn then to an examination of the various exceptions to determine whether evidence of subsequent criminal acts or crimes was admissible in the instant case.

The legal writers on the subject indicate that the elements of motive, opportunity, and intent are some-

what similar and can be discussed together. Motive has been defined in the law as the "[c]ause or reason that moves the will and induces action. An inducement, or that which leads or tempts the mind to indulge a criminal act." Black's Law Dictionary 914 (5th ed. 1979). In criminal law, "motive" is that which leads or tempts the mind to indulge in a criminal act. *State v. Knox*, 236 Iowa 499, 18 N.W.2d 716 (1945). See, also, *Williams v. State*, 113 Neb. 606, 204 N.W.64 (1925). Intent, likewise, has been defined as "[d]esign, resolve, or determination with which person acts." Black's Law Dictionary 727 (5th ed. 1979). "Intent" in criminal law means a state of mind which willingly consents to an act done, or free will choice, or volition in doing of an act. See *State v. McLeod*, 131 Mont. 478, 311 P.2d 400 (1957).

In common usage intent and motive are not infrequently regarded as one and the same thing. In law there is a distinction between them. Motive is the moving power which impels to action for a definite result. Intent is` the purpose to use a particular means to effect such result. Motive is that which incites or stimulates a person to do an act, while intent means the intent to commit a crime or perform an act which is criminal in nature. Therefore, before evidence of another crime is admissible in evidence to prove that the act charged was done with a criminal motive or intent, it is necessary that the instant act be proven to have been committed. Evidence of a prior crime is not admissible to prove the commission of a subsequent act, but only to prove the motive or intent with which the subsequent act was committed. Until there is some evidence, direct or circumstantial, that the accused had committed *any act*, evidence of another crime to prove motive, intent, or opportunity is inadmissible. Logic would seem to make it clear that evidence of present motive, intent, or opportunity would be of no significance until there was some evidence that a present act had been committed by the accused.

In the instant case, the State was unable to offer any

evidence that the accused committed any particular act which resulted in Ms. Forycki's death. The motive which the prosecution sought to establish was that the accused sought sexual gratification from the victim and when it was refused, killed her. The State sought to base that conclusion on evidence that the defendant had sought sexual gratification from two others on subsequent occasions. The difficulty with the argument is that there is no evidence that the victim was sexually assaulted before she was killed. The prosecution also sought to establish intent by showing that the accused had on other occasions intentionally assaulted other women. Again, there is simply no evidence of any sexual assault in the present case. Such a conclusion is sheer speculation.

Attempting to establish the commission of a present act by showing the motive and intent involved in other subsequent acts is far beyond any permissible limits heretofore permitted. This is best illustrated by this court's decision in *State v. Franklin*, 194 Neb. 630, 234 N.W.2d 610 (1975), wherein we held that evidence of similar acts with third persons was not admissible. We said in *State v. Franklin, supra* at 642-43, 234 N.W.2d at 617: "It is the usual rule that in a criminal prosecution evidence of crimes committed by the accused, other than that with which he is charged, is not admissible. State v. Brown, 190 Neb. 96, 206 N.W.2d 331. An exception to the above rule is that evidence of similar offenses is admissible where an element of the crime charged is motive, a particular criminal intent, or guilty knowledge. State v. Ray, 191 Neb. 702, 217 N.W.2d 176; State v. Young, 190 Neb. 325, 208 N.W.2d 267; State v. Rich, 183 Neb. 128, 158 N.W.2d 533." Before we can address either nature or intent to commit an act, we must first establish the commission of the act. The evidence in this case fails in that regard.

Further, in *State v. Franklin, supra* at 643, 234 N.W. 2d at 618, we said: *"Evidence of similar crimes with third persons is not admissible.* Henry v. State, 136 Neb.

454, 286 N.W. 338; Nickolizack v. State, 75 Neb. 27, 105 N.W. 895." (Emphasis supplied.) Based upon our decision in *Franklin*, evidence of a prior crime with a third person would be inadmissible to establish motive, intent, or opportunity in the instant case. That being the case, how can the commission of a *subsequent* crime with a third person be admissible? The evidence introduced by the State was not admissible for the purpose of establishing motive, intent, or opportunity.

We turn then to "preparation and plan," which may be viewed together. Professor Wigmore, in his now famous work on evidence, discusses plan or design as follows: "Design or plan, however . . . is not a part of the issue, an element of the criminal fact charged, but is the preceding mental condition which evidentially points forward to the doing of the act designed or planned." 2 Wigmore on Evidence § 300 at 238 (1979). "Evidence showing a plan establishes a definite *prior* design, plan, or scheme which includes the doing of the act charged. As Wigmore states, there must be 'such a concurrence of common features that the various acts are materially to be explained as caused by a general plan of which they are the individual manifestations.'" (Emphasis supplied.) *State v. Spraggin*, 77 Wis. 2d 89, 99, 252 N.W.2d 94, 98-99 (1977). In other words, plan or design refers to a time *prior* to the commission of the act. To introduce evidence of subsequent acts in order to establish the fact that one had a plan or design prior in time appears to defy reason and logic. The fact that it may be shown that the accused assaulted an individual at a subsequent time does not logically establish that he had a plan to commit some other prior illegal act. In the instant case, the problem is even more compounded because here there is no evidence of what act was in fact committed and, therefore, no basis upon which we can determine a plan or design for committing the act. We are here attempting to prove the commission of an act by establishing the existence of a subsequent plan to commit a subsequent act. The evi-

dence of the subsequent acts could not have been introduced to prove "preparation or plan."

We turn then to the next item, "knowledge." Whether one argues that the introduction of testimony of the subsequent acts was for the purpose of showing Ellis' knowledge that the instant act committed was criminal or for the purpose of showing that he knew of the location of the water wagon, it was improper. There is no rational basis from which it may be argued that the fact that he knew something in 1976 means that he knew it in 1974. The use of circumstantial evidence is dependent upon the ability of one to reach a logical inference from the circumstances. The evidence of a subsequent act must be disregarded where, as here, it is introduced for the purpose of establishing the knowledge of the commission of a prior crime. There is simply no basis in reason or logic to maintain that the fact one knew something subsequent to the commission of an act proves he knew it prior to the commission of an act.

Even if we accept the State's argument that the purpose of the testimony of the subsequent act at Elmwood was simply to prove that the accused knew of the location of the area where the body was found, the testimony concerning what subsequently took place at the location with a third person was clearly improper and prejudicial. If admissible at all, the witness could have easily testified that she and the accused were at the location, thereby establishing the accused's knowledge of the location, without further testimony concerning what took place. While I do not believe that evidence of subsequent knowledge is admissible to prove prior knowledge, if it is permitted, it must be permitted in an extremely limited manner and for a limited purpose. In the instant case, that limitation was grossly exceeded, to the prejudice of the accused.

Moreover, the few cases that have discussed this matter of knowledge lead one to the conclusion that the introduction of another criminal act, whether prior or subsequent, may be allowed only for the purpose of

establishing the accused's knowledge that the act being committed was a crime, and for no other purpose. See 2 Wigmore on Evidence § 300 (1979). The testimony concerning subsequent acts with the two other women was inadmissible to prove "knowledge" in this case. This then leaves us with the matter of "identity."

Before evidence of another crime may be introduced for purposes of identity, the device used must be so unusual and distinctive as to be like a signature. McCormick on Evidence § 190 at 449 (2d ed. 1972). The majority in this case has concluded that the victim met her death by violent means. I am willing to accept that conclusion. Yet, as noted by the majority, all of the witnesses called for the purpose of establishing the cause of death were unable to testify as to the exact cause. We do not, to this day, know whether the victim died by strangulation following a sexual assault, by stabbing, by poisoning, or by shooting. The most we know is that she met her death by violent means. We have therefore concluded that *any* evidence of *any* subsequent violent act may be introduced in evidence to establish the identity of a prior act. Such a conclusion far exceeds any permissible limits existing as an exception to the rule that evidence of other crimes may not be introduced in evidence.

A very clear example of this is found in the case of *People v. Guerrero*, 16 Cal. 3d 719, 548 P.2d 366, 129 Cal. Rptr. 166 (1976), wherein the California Supreme Court was asked to review a judgment of conviction of first degree murder. Evidence of an uncharged rape occurring on an *earlier* occasion and involving a *different* victim was admitted in evidence. In permitting the evidence of the earlier crime to be admitted the trial court pointed to a number of asserted similarities between the rape and the charged murder, including the fact that each offense involved the use of a maroon Pontiac Le Mans automobile, with defendant driving; the victims were approximately the same age; on both occasions defendant initially had other males with him in

the car; in each offense defendant drove around the city, stopping at the same parking lot; in each case the parties made stops to buy beer and wine and each time defendant drove while drinking; each offense involved "sexually oriented activity"; both times the defendant took or attempted to take the girl home alone; and on both occasions the court can infer from the evidence that defendant used a wrench.

In rejecting the introduction of that testimony, however, the California Supreme Court said: "However, 'It has frequently been recognized . . . that because of the sound reasons behind the general rule of exclusion, the relevancy of evidence of other crimes, and therefore its admissibility, must be examined with care. [Citation.] The evidence should be received with "extreme caution," and if its connection with the crime charged is not clearly perceived, the doubt should be resolved in favor of the accused. [Citations.]'" *Id.* at 724, 548 P.2d at 368-69.

Going further, the California Supreme Court said: "On the issue of identity the evidence of the Lopez crime is not only cumulative, it is also irrelevant. Few of the asserted similarities between the Lopez and Santana offenses aid in placing defendant at the scene of the alleged murder. . . . If the victim had been attacked in a distinctive manner that was identical to a previous crime defendant had committed, then the evidence of the other crime might have probative value. But the only claimed connection that has any logical relevance is evidence of 'sexual activity' in both cases and the possible use of a wrench. Even if both facts were established — which, as will be discussed, is highly dubious — it could not reasonably be claimed that the two offenses were committed in a particularly distinct manner that tends to inculpate defendant." *Id.* at 725, 548 P.2d at 369.

Several Nebraska decisions would indicate that on careful analysis we would, likewise, adopt the California rationale. In *State v. Irwin*, 191 Neb. 169, 214

N.W.2d 595 (1974), we held that testimony concerning Irwin's previous trouble, even as background material, was erroneously admitted in evidence, saying at 189, 214 N.W.2d at 607: "The so-called background material was clearly irrelevant and immaterial and the rulings of the court on objections to the testimony were erroneous. The quoted information could only be designed to influence the verdict and the persistence of the witness in pursuing his course seemed designed to that end."

In *State v. Casados*, 188 Neb. 91, 94-95, 195 N.W.2d 210, 213 (1972), we said: "As a general rule, evidence of other crimes than that with which the accused is charged is not admissible in a criminal prosecution. Evidence of other crimes, similar to that charged, is relevant and admissible when it tends to prove a particular criminal intent which is necessary to constitute the crime charged. See State v. Easter, 174 Neb. 412, 118 N.W.2d 515.

"In many instances, courts have limited such evidence to proof of *prior* similar acts. Other courts have extended it to include similar acts occurring after the particular crime charged, *provided there was at least one former act.* In any event, proof of another distinct substantive crime is not admissible in a criminal prosecution unless there is some legal connection between the two upon which it can be said that one tends to establish the other or some essential fact in issue.

"'Peculiarly applicable to criminal cases is the rule which prohibits the introduction of evidence of other wholly independent offenses as the basis for an inference that the defendant is guilty of the offense for which he is being tried. * * * One basic reason for the rule is that such evidence is apt to be given too much weight, rather than too little, by the jury, thus resulting in the conviction of a defendant because he is a bad man and not because of his specific guilt of the offense with which he is charged.' 1 Jones on Evidence (5th Ed.), § 162, p. 290. See, also, 2 Wigmore on Evidence (3rd Ed.), § 302, p. 200." (Emphasis supplied.)

The majority has cited the case of *The State v. King,* 111 Kan. 140, 206 P. 883 (1922), as authority for the proposition that other offenses need not be prior in time. However, in the *King* case, there was both a *prior* murder as well as a *subsequent* murder. Moreover, in *King,* the evidence was such that one could determine the similarity in the cause of death in all three cases. That is not so in the case at bar. Because we do not know what happened to Ms. Forycki, we are unable to show any legal connection between the charged act and the subsequent acts upon which it can be said that one tends to establish the other or some essential fact in issue.

The admonition of the *Casados* decision is most applicable in the case at bar. The characteristics of the other offense and the charged offense must, indeed, be similar in detail and not merely in the fact that it was a like crime.

In *State v. Bly,* 215 Kan. 168, 174, 523 P.2d 397, 403 (1974), the Kansas Supreme Court repeated the generally recognized rule concerning the admissibility of other crimes by saying: " 'The rule against the admissibility of evidence of other similar but independent offenses should always be strictly enforced . . . .' " Moreover, the Kansas Supreme Court specially found that evidence of other crimes should be excluded if its only purpose is to show the defendant's disposition, inclination, attitude, tendency, or propensity to commit crime. See, also, *Hertz v. State,* 160 Neb. 640, 71 N.W.2d 113 (1955); *City of St. Paul v. Greene,* 238 Minn. 202, 56 N.W.2d 423 (1952).

The mere fact that one may conclude that the victim met her death by violence is not sufficient to establish the requisite similarity between the manner in which she met her death and the subsequent acts committed by the accused. As a matter of fact, the evidence in the instant case, if it tends to prove anything, disproves that conclusion. The evidence of both subsequent incidents discloses that the accused retreated when the vic-

tim screamed and objected. In each subsequent instance, there was no injury committed to the individuals. To therefore suggest that, because there is evidence that on two subsequent occasions the accused retreated when rejected, we may conclude that there is a similarity with the commission of a murder is far beyond the exception to § 27-404(2).

The legal authors have further indicated that in addition to examining all of the items to determine relevancy, there must be a further examination made to determine whether, even if relevant and admissible, the evidence may not work great prejudice. In Nebraska we have, likewise, concerned ourselves with that fact by adopting Neb. Rev. Stat. § 27-403 (Reissue 1979), wherein it is said: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

McCormick on Evidence § 190 at 452-54 (2d ed. 1972) observes: "There is an important consideration in the practice as to the admission of evidence of other crimes which is little discussed in the opinions. This is the question of rule versus discretion. Most of the opinions ignore the problem and proceed on the assumption that the decision turns solely upon the ascertainment and application of a rule. If the situation fits one of the classes wherein the evidence has been recognized as having independent relevancy, then the evidence is received, otherwise not. This mechanical way of handling these questions has the advantage of calling on the judge for a minimum of personal judgment. But problems of lessening the dangers of prejudice without too much sacrifice of relevant evidence can seldom if ever be satisfactorily solved by mechanical rules. And so here there is danger that if the judges, trial and appellate, content themselves with merely determining whether the particular evidence of other crimes

does or does not fit in one of the approved classes, they may lose sight of the underlying policy of protecting the accused against unfair prejudice. The policy may evaporate through the interstices of the classification.

"Accordingly, some of the wiser opinions (especially recent ones) recognize that the problem is not merely one of pigeonholing, but one of balancing, on the one side, the actual need for the other-crimes evidence in the light of the issues and the other evidence available to the prosecution, the convincingness of the evidence that the other crimes were committed and that the accused was the actor, and the strength or weakness of the other-crimes evidence in supporting the issue, and on the other, the degree to which the jury will probably be roused by the evidence to overmastering hostility.

"Such a balancing calls for a large measure of individual judgment about the relative gravity of imponderables. Accordingly, some opinions stress the element of discretion. It should be recognized, however, that this is not a discretion to depart from the principle that evidence of other crimes, having no substantial relevancy except to ground the inference that accused is a bad man and hence probably committed this crime, must be excluded. The leeway of discretion lies rather in the opposite direction, empowering the judge to exclude the other-crimes evidence, even when it has substantial independent relevancy, if in his judgment its probative value for this purpose is outweighed by the danger that it will stir such passion in the jury as to sweep them beyond a rational consideration of guilt or innocence of the crime on trial. Discretion implies not only leeway but responsibility. A decision clearly wrong on this question of balancing probative value against danger of prejudice will be corrected on appeal as an abuse of discretion."

In the instant case, the introduction of subsequent acts was both inadmissible as not being an exception to

§ 27-404(2) and for the further reason that it was clearly prejudicial — not that it was harmful. As noted by the majority, evidence harmful to the defendant may be introduced. However, in the instant case, the evidence of subsequent acts was legally prejudicial to the rights of the accused to obtain a fair trial. The prejudice is evidenced by the verdict of the jury. As noted at the outset of this dissent, if the accused was guilty of anything, it was not manslaughter. The conclusion reached by the jury obviously was a compromise based in part upon evidence that the accused was a "bad man" who had committed other subsequent acts which should not be approved.

If the evidence of the two subsequent acts is omitted from the State's case, as it should have been, there was simply insufficient evidence upon which the case could have been submitted to the jury. Its verdict in the case would have been based upon absolute and sheer speculation. Believing as I do that the evidence of the two subsequent crimes should not have been permitted, I would reverse and dismiss.

McCOWN, J., joins in this dissent.

BRODKEY, J., separately dissenting.

The facts of this bizarre case are set out in detail in the majority opinion, and also in the dissenting opinion written by Judge Krivosha; and, in the interest of brevity, will not be repeated in this dissenting opinion.

It is my opinion that the evidence adduced by the State at the trial of the defendant in District Court, even assuming for the moment that all of such evidence was properly received, was totally insufficient to establish beyond a reasonable doubt that the defendant was the person who killed Deborah Forycki, in which case he would not be guilty of the crime of homicide in any degree; and, more specifically, was completely insufficient to establish that the defendant was guilty of the crime of which he was convicted, to wit, manslaughter,

which not only requires the proof of a homicide committed by the defendant but also that the killing was done either upon a sudden quarrel or while in the commission of an unlawful act.

There were no eyewitnesses to the killing of Deborah Forycki, nor is there any direct evidence in the record establishing beyond a reasonable doubt when she was killed, where she was killed, and by whom and under what circumstances she was killed. There is not even evidence in the record establishing beyond a reasonable doubt what caused her death, i.e., by shooting, strangulation, stabbing, or in some other manner. There is no direct evidence in the record that the defendant even knew Deborah Forycki, or that they were seen together on the day of the alleged homicide. The evidence adduced by the State to prove these matters was all circumstantial in nature. The State introduced evidence to prove that defendant Ellis and Forycki had classes in the same building at the University of Nebraska on October 3, 1974, but such classes were not even in the same classroom. Apparently Ellis was absent from his class on that date. One might wonder how many other students were absent from classes in that building that day. Also, the police testified that after Forycki's disappearance on October 3, 1974, the police found an undated note while examining Forycki's possessions which read: "Meet John Kondowski 10:30 at the Student Union." The note, which was apparently misplaced by the police and not produced at the trial, does not indicate on what date she was to meet John Kondowski, or who he was. The State endeavored to supply this deficiency by introducing the evidence of a witness who testified that subsequent to October 3, 1974, she had a breakfast date with the defendant, whom she said used the alias of "John Tronzowski," during which she was assaulted by him, and that he used a knife in the course of the assault. The police witnesses for the State testified that they had checked the name of "John Kondowski" but their subsequent investigation failed to

reveal the existence of any person by that name in Lincoln. One might ask whether every person with a foreign sounding surname ending in "ski" in the Lincoln telephone book is automatically a suspect for the killing of Deborah Forycki. Finally, the State produced another witness who testified with reference to her experiences with Ellis in 1976, approximately 2 years after Forycki's disappearance. She testified that she was assaulted by Ellis on a farmstead in Cass County in June of 1976, which assault occurred within 75 feet of the location of the water wagon which contained the remains of Forycki. The witness was further allowed to testify, over objection, with regard to the details of the assault, which also involved a knife. Other evidence also established that Ellis was familiar with the area in which the water wagon containing the remains of Deborah Forycki was located.

The above constitutes the principal evidence adduced by the State against Ellis. While such evidence may be considered as sufficient to establish a "possibility" that Ellis may have killed Forycki, it falls far short of establishing a "probability" that he killed her, and even less to establish a "strong probability" that he did so. In no case could it be considered sufficient to establish proof "beyond a reasonable doubt," which is the test required by law in criminal cases. "Evidence creating a mere probability of guilt, even though a strong one, is not sufficient; much less is evidence creating a mere possibility of guilt, or evidence which gives rise to a mere suspicion or conjecture of guilt." 23 C.J.S. *Criminal Law* § 907 at 577 (1961). In *O'Connor v. State,* 110 Neb. 822, 829, 195 N.W. 125, 128 (1923), this court stated: "When it is sought to establish the guilt of the accused in a criminal case by circumstantial evidence, it is not sufficient that the facts create a *probability,* though a strong one." (Emphasis supplied.)

As previously stated, the evidence in this case upon which Ellis was convicted was largely, if not completely, circumstantial. In *State v. Doyle,* 205 Neb. 234,

240-41, 287 N.W.2d 59, 63-64 (1980), we reviewed the Nebraska authorities with regard to criminal convictions based upon circumstantial evidence. In that case we stated:

"In the recent case of State v. Klutts, 204 Neb. 616, 284 N.W.2d 415, we reviewed our rules with regard to a criminal conviction based upon circumstantial evidence, saying, 'Where circumstantial evidence is relied upon, the circumstances proven must relate directly to the guilt of the accused beyond all reasonable doubt in such a way as to exclude any other reasonable conclusion.' To justify a conviction on circumstantial evidence, it is necessary that the facts and circumstances essential to the conclusion sought must be proven by competent evidence beyond a reasonable doubt, and, when taken together, must be of such a character as to be consistent with each other and with the hypothesis sought to be established thereby and inconsistent with any other reasonable hypothesis of innocence. State v. Faircloth, 181 Neb. 333, 148 N.W.2d 187. Any fact or circumstance reasonably susceptible of two interpretations must be resolved most favorably to the accused. State v. Klutts, *supra.*

"In Reyes v. State, *supra*, we said, '[A] conviction should not be based upon suspicion, speculation, the weakness of the status of the accused, the embarrassing position in which he finds himself, or the mere fact that some unfavorable circumstances are not satisfactorily explained.'"

Under the standards and guidelines as set out in the above quotations the evidence was insufficient to establish beyond a reasonable doubt either that Ellis killed Forycki or, more specifically, that he killed her while in a sudden quarrel or while in the commission of an unlawful act.

The conclusion we have reached, as above stated, is made with reference to the evidence in the record as presented to this court. A fortiori, the conclusion is even more valid if the evidence received by the trial court,

particularly the testimony of the two witnesses who testified as to certain acts and experiences which occurred after the offense under consideration, to wit, the disappearance of Deborah Forycki on October 3, 1974, is not considered. If the testimony of both, or either, of these witnesses was improperly received, and is stricken from the record, the case of the State becomes so weak as to be almost nonexistent. I note in passing that Justice Krivosha in his dissenting opinion in this case would exclude the testimony of the two witnesses in question on the grounds that the criminal offenses to which they testified occurred subsequent to the crime involved in the instant case. I do not believe that the fact that the other crimes testified to occurred subsequent to the principal offense is determinative of the question of the admissibility of other crimes, but rather the important question is the remoteness of the other crimes in point of time. See, 29 Am. Jur. 2d *Evidence* § 327 (1967); *Goldsberry v. State,* 66 Neb. 312, 92 N.W. 906 (1902); *Payne v. State,* 233 Ga. 294, 210 S.E.2d 775 (1974); 2 Weinstein's Evidence ¶404[09] (1980); Annot., "Admissibility of Evidence of Subsequent Criminal Offenses as Affected by Proximity as to Time and Place," 92 A.L.R.3rd 545 et seq. (1979). The foregoing annotation, at 598, discusses cases in which evidence of similar subsequent offenses was received for the purpose of proving the identity of the perpetrator, where the subsequent offenses were not so remote so as to preclude admission. In this connection, see, also, McCormick on Evidence § 190 at 451-52 (2d ed. 1972).

On the other hand, Nebraska has clearly recognized the importance of the element of "remoteness" in the determination of whether evidence of other crimes is admissible. *State v. Moore,* 187 Neb. 498, 192 N.W.2d 155 (1971); *State v. Rich,* 183 Neb. 128, 158 N.W.2d 533 (1968). In *State v. Moore, supra* at 499, 192 N.W.2d at 156, we stated: "Whether such other crimes are too remote is determinable by the exercise of judicial discretion, the *limits of discretion being set by the facts*

*of each case."* (Emphasis supplied.)

In the instant case, the other crimes testified to by the two female witnesses occurred subsequent to the date of Forycki's disappearance. It is not clear how soon after October 3, 1974, the first incident at the breakfast occurred, but it apparently was during the same month. We are not prepared to state as a matter of law that this incident was too remote in time to be admitted under the rules above set out. However, the incident testified to by the second female witness occurred over 2 years after the disappearance of Forycki. In my opinion, the testimony of this witness should have been excluded as being too remote in time. The testimony of this witness was undoubtedly prejudicial inasmuch as she was the one who testified that Ellis had taken her to the same locality in which the water wagon was located. In my opinion, the admission of this testimony was clearly improper; and, at the minimum, should entitle the defendant to a new trial.

As a matter of fact, I am convinced that the evidence of both of the female witnesses should have been excluded for another reason. The applicable statute involved in this case is Neb. Rev. Stat. § 27-404(2) (Reissue 1979) which provides: "(2) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

The purpose for such rule was set out in *Whitty v. State*, 34 Wis. 2d 278, 292, 149 N.W.2d 557, 563 (1967), where the court stated: "The character rule excluding prior-crimes evidence as it relates to the guilt issue rests on four bases: (1) The overstrong tendency to believe the defendant guilty of the charge merely because he is a person likely to do such acts; (2) the tendency to condemn not because he is believed guilty of the present charge but because he has escaped punishment from

other offenses; (3) the injustice of attacking one who is not prepared to demonstrate the attacking evidence is fabricated, and (4) the confusion of issues which might result from bringing in evidence of other crimes."

Trial courts are given the difficult task of balancing the need for the evidence of other crimes against the degree to which the jury will be prejudiced by such evidence. See *State v. Williams*, 205 Neb. 56, 287 N.W.2d 18 (1979). Such discretion empowers "the judge to exclude the other-crimes evidence, even when it has substantial independent relevancy, if in his judgment its probative value for this purpose is outweighed by the danger that it will stir such passion in the jury as to sweep them beyond a rational consideration of guilt or innocence of the crime on trial." McCormick on Evidence § 190 at 453-54 (2d ed. 1972). See, also, 1 Underhill's Criminal Evidence § 205 (6th ed. 1973).

In this case we believe such evidence had a prejudicial effect upon the jury. It must be remembered that Ellis was charged solely with the first degree murder of Forycki. To prove its case, the State adduced evidence that Ellis had assaulted two other women with a knife during attempts to engage in sexual relations with them. The closing argument of the State makes quite clear the purpose for which evidence of such other crimes or bad acts was adduced. The State argued that because Ellis engaged in assaults against other women, it necessarily followed that he must have engaged in an assault against Forycki. Therefore, the State contended that the evidence of other assaults showed the motive, intent, *modus operandi*, and/or plan for the assault and homicide of Forycki, even though there is no evidence of the use of a knife on Forycki.

The use of such evidence is nebulous, at best; and if considered to show knowledge of the secluded area where the body was found, such evidence was not required, as the witness Burns testified that Ellis had knowledge of the area. If considered to prove the identity of the defendant Ellis, it is generally held that a

higher standard is required, and that the prior or subsequent crimes testified to must exhibit a high degree of similarity to the acts with which the accused is charged and must in effect be the "signature or handiwork" of the accused. See, *United States v. Silva*, 580 F.2d 144 (5th Cir. 1978); McCormick on Evidence § 190 at 449 (2d ed. 1972). As previously pointed out, in the instant case, while it is true in the incidents testified to by the two witnesses referred to, Ellis had in both instances used a knife in an unsuccessful attempt to accomplish his purpose, yet, there is nothing in the record of this case to indicate that Forycki had died from a knife wound. In fact, the evidence indicates that the cause of her death might possibly have been a shooting by a gun. Moreover, if the testimony of the second witness, whose incident occurred 2 years after the disappearance of Forycki, is not considered, no *modus operandi* is established which would justify the use of such evidence in an effort to convict Ellis of first degree murder, as charged. A review of the evidence adduced by the two female witnesses, and an analysis of the use of such evidence during the trial, convinces us that the evidence of the subsequent events was used to replace evidence of what happened to Deborah Forycki. The inescapable conclusion is that the evidence was offered for the purpose of establishing that if Ellis assaulted the two witnesses with a knife, which was done after Forycki's disappearance, he therefore murdered Deborah Forycki.

It seems clear that the proof of Ellis' guilt was based on other "bad acts" committed by him, rather than on the commission of the crime for which he stood trial. This is exactly what § 27-404(2) was intended to prevent. In effect, the State stripped Ellis of his presumption of innocence.

Our criminal justice system is based on the premise that a criminal defendant is innocent until proven guilty by the State of the crime for which he stands trial. It is axiomatic that the criminal defendant cannot

be convicted of the crime charged solely on the basis of other crimes or bad acts. The right to a fair trial must necessarily include the right to be tried solely for the crime charged. I am convinced that Ellis was not only standing trial for the homicide of Forycki but also for the assaults on the other two witnesses, at least in the jurors' minds. The evidence with reference to the other assaults should not have been admitted because Ellis, in addition to the homicide of Forycki, was, in effect, standing trial for crimes with which he was not charged.

It may well be that the defendant in this case is, in fact, guilty of the crimes with which he was charged and convicted, but the State in this case has failed to prove it by proper evidence "beyond a reasonable doubt." In this case, even taking the view most favorable to the State, there is insufficient evidence to sustain the verdict. Justice requires that we abide by the established rules of evidence. If I may borrow the words of Justice Spencer in his dissenting opinion in *State v. Ohler*, 178 Neb. 596, 604-06, 134 N.W.2d 265, 270-71 (1965): "I believe our rule still is that an accused is presumed to be innocent until he has been proved guilty beyond a reasonable doubt. The defendant has been convicted solely because he had an opportunity to commit the crime because he was on the scene during a part of the period within which the crime could have been committed. . . . The most we can say about the evidence adduced is that the defendant had an opportunity to commit the crime and there is a strong suspicion that he did, but this falls far short of proving him guilty beyond a reasonable doubt. There is no question but that the actions of the defendant were to say the least very suspicious, yet suspicion does not suffice for evidence." In the instant case there was not even evidence that the defendant was present at the scene of the crime at the time it was committed.

As a result of my examination of the record, I am of the opinion that the defendant did not have a fair and

impartial trial according to law and the established rules of criminal procedure to which every person, whether guilty or innocent, is entitled. I would prefer to reverse the judgment and conviction by the District Court and remand the cause for a new trial. However, my attention has been directed to a very recent opinion released by the Supreme Court of the United States in the case of *Hudson v. Louisiana*, No. 79-5688, 49 U.S.L.W. 4159, decided February 24, 1981, in which the court indicates that the double jeopardy rule prevents the prosecution of a defendant a second time for first degree murder where either the trial judge or the appeal court has decided that the evidence was legally insufficient to support the jury's guilty verdict. In view of the implications of *Hudson v. Louisiana*, therefore, and also in view of my conclusions as expressed in my dissenting opinion set out above in which I have concluded that there was insufficient evidence to convict the defendant even considering the testimony of the two female witnesses, I would hold that the judgment of conviction and sentence by the trial court should be vacated and the cause dismissed.

McCOWN, J., joins in this dissent.